Argued November 28, 1973, reversed and remanded February 11, petition for review denied May 21, 1974

## CAMPBELL, *Petitioner, v.* BOARD OF MEDICAL EXAMINERS, *Respondent.*

518 P2d 1042

*Nels Peterson,* Portland, argued the cause for petitioner. With him on the brief were Peterson, Chaivoe & Peterson, and Phillip M. Margolin, Portland.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

This is a proceeding for judicial review of an order of the Board of Medical Examiners.

In 1957 petitioner was granted a license to practice medicine in Oregon. In 1967 petitioner's license registration was changed to inactive, out-of-state, when he moved to Oklahoma to accept a position with a federal agency. In 1971 petitioner returned to Oregon and submitted an application for active registration to respondent Board. The Board, after considering the matter, denied petitioner's application, stating that it based its refusal on ORS 677.170 (3).[①]

Petitioner sets forth numerous assignments of error. The basic issue, however, is whether the proceedings were in conformity with applicable statutes and complied with due process requirements, so as not to prejudice substantial rights of the petitioner.

The following is a chronology of the events that led up to the challenged hearing:

In December 1970, while working in Oklahoma, petitioner requested information from the Oregon Board of Medical Examiners concerning a change of registration from inactive to active upon his return to this state. The Board advised petitioner by letter that he would have to file an affidavit concerning his activities since leaving the state in 1967.

---

[①] ORS 677.170 (3) provides:

"If any person licensed to practice medicine in this state and registered under ORS 677.150 changes his location of practice to some other state or country, he shall be listed by the board as inactive. * * * Before resuming practice in this state, he shall notify the board of his intention to resume active practice in this state and obtain a certificate of active registration for the year he returns. * * * He shall file an affidavit with the board in which he describes his activities during his absence from this state. If, in the judgment of the board, his conduct has been such, during his absence, that he would have been denied a license if applying for an initial license to practice medicine in this state, the board shall deny active registration."

On August 2, 1971, petitioner informed the Board that he was practicing medicine at the Astoria Clinic in Astoria, Oregon. On August 3 the Board advised petitioner that he could not practice medicine without an active license and requested him to file an affidavit describing his activities since leaving the state. This affidavit, dated August 4, was filed with the Board on August 5.

The Board's answer, dated August 25, 1971, stated in part:

"The Board conducted an investigation based upon the information furnished to the Board in your affidavit. The results of this investigation disclosed that your conduct has been such during your absence from the state that if you had been applying for an initial license to practice medicine in this state, the Board would have denied such initial license. Therefore, the Board is required by Oregon law to deny you active registration in the State of Oregon (ORS 677.170 (3))."

On September 2, 1971, petitioner requested a hearing before the Board on its denial of active registration. On December 28, 1971, the Board notified petitioner that he was granted a hearing. However, it was not until January 3, 1972, that the Board notified petitioner of the particular conduct it considered in denying his application. This notification was contained in an explicit "Bill of Particulars" which was requested by petitioner's counsel, and which stated that, pursuant to ORS 677.170 (3), the Board denied petitioner's application for active registration because of six specified "acts, statements or conduct." A hearing was subsequently held before a hearing officer appointed by the chairman of the Board, following which the Board issued its Order of Denial.

Petitioner argues that he did not receive adequate notice of the grounds for the denial prior to the hearing thereon because the only statute referred to in either the denial letter or the Bill of Particulars was ORS 677.170 (3). At the hearing the assistant attorney general representing the Board announced that the denial was based on lack of good moral character. ORS 677.100 (1)(e).

ORS 677.208 provides that when the Board refuses to issue or proposes to revoke or suspend a license, a hearing shall be accorded as provided in ORS 183.310 to 183.500. ORS 183.415 (2) provides that notice shall include a "(c) * * * reference to * * * statutes and rules involved" and a "(d) * * * statement of the matters asserted or charged."

The Bill of Particulars sufficiently sets forth "matters asserted or charged." ORS 183.415 (2) (d). *The Grog House v. OLCC*, 12 Or App 426, 507 P2d 419 (1973). This conduct referred to in the Bill of Particulars relates to the moral character requirement of ORS 677.100 (1) (e); however no reference to this statute was made by the Board prior to the hearing. The allegations in the Bill of Particulars, as well as the evidence which was introduced at the hearing, tended to show that petitioner had violated ORS 677.080 (1) (making false and misleading statements on the August 4 affidavit) and ORS 677.080 (4) (practicing medicine in Oregon without an active license).

■ Petitioner's right, as a licensee (or applicant for active registration) to practice medicine, may be denied only by procedures satisfying the due process clause of the United States Constitution. *Board of Medical Examiners v. Buck*, 192 Or 66, 232 P2d 791 (1951), 200 Or 488, 258 P2d 124 (1953), *appeal dis-*

*missed* 346 US 919 (1954); *Board of Medical Examiners v. Cusick,* 234 Or 533, 383 P2d 69 (1963); *see also, Willner v. Committee on Character,* 373 US 96, 83 S Ct 1175, 10 L Ed 2d 224 (1963); *Schware v. Board of Bar Examiners,* 353 US 232, 77 S Ct 752, 1 L Ed 2d 796, 64 ALR2d 288 (1957). Primary among these procedures is that petitioner be afforded adequate notice prior to a hearing thereon.

Prior to 1971, the statutes required only that notice "state the time, place and issues involved." ORS 183.420 (repealed Oregon Laws 1971, ch 734, § 21, p 1786). In 1971 the legislature adopted ORS 183.415, specifically setting out four requirements of notice.[®] Oregon Laws 1971, ch 734, § 13, p 1779.

■ The requirement of notice is primarily to allow petitioner an opportunity to prepare an adequate defense. *Goldberg v. Kelly,* 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970); *see also,* 1 Davis, Administrative Law 523, 525, § 8.04 (1958).

■ While the Bill of Particulars afforded petitioner here did not include references to all the particular sections of the statutes and rules which were conceivably involved (ORS 183.415 (2)(c)), it did spell out in sufficient detail all the conduct which was the basis of the Board's denial action. As in *The Grog House,* 12 Or App at 433-34, the record in the case at bar

---

[®] ORS 183.415 (2) provides:

"(2) The notice shall include:

"(a) A statement of the party's right to hearing, or a statement of the time and place of the hearing;

"(b) A statement of the authority and jurisdiction under which the hearing is to be held;

"(c) A reference to the particular sections of the statutes and rules involved; and

"(d) A short and plain statement of the matters asserted or charged."

clearly shows that petitioner had detailed advance knowledge and was fully aware of the specific facts and charges which formed the basis of the action taken, in order to enable him to prepare his defense. He did not ask for a continuance. Therefore we cannot say that the failure of the Board to append references to ORS. 677.100 (1) (e) and ORS 677.080 (1) and (4) amounted to a denial of due process of law. *The Grog House v. OLCC,* supra. To the same effect, *see also, Swift & Company v. United States,* 393 F2d 247 (7th Cir 1968) ; *Sisto v. Civil Aeronautics Board,* 179 F2d 47, 52 (DC Cir 1949) ; *Brahy v. Federal Radio Commission,* 59 F2d 879 (DC Cir 1932).

Next, petitioner argues that the hearing officer should have been disqualified because he is also the executive secretary of the Board.

■ Although so far as we can determine this question has never previously been passed upon by an appellate court in this state, it appears that the weight of authority elsewhere is that the fact that a hearing officer performs more than one function for the agency involved does not render the hearing unfair. *Richardson v. Perales,* 402 US 389, 91 S Ct 1420, 28 L Ed 2d 842 (1971) ; *Marcello v. Bonds,* 349 US 302, 75 S Ct 757, 99 L Ed 1107 (1954) ; *Converse v. Udall,* 262 F Supp 583 (D Or 1966), *affirmed* 399 F2d 616 (1968), *cert denied* 393 US 1025 (1969). *See also,* 2 Davis, Administrative Law 235, 237, § 13.10 (1958) ; 1 Cooper, State Administrative Law 338, § 5 (1965). Further, we note that here there is no statutory provision for disqualifying the hearing officer. Even assuming arguendo that a right to disqualify a hearing officer exists without the necessity of a specific statute authorizing it, our review of the record fails to reveal

any bias or prejudice by the hearing officer. *See, Palm Gardens, Inc. v. OLCC,* 15 Or App 20, 34, 514 P2d 888 (1973), Sup Ct *review denied* (1974); *cf., Whitney v. Morgan,* 9 Or App 289, 291, 497 P2d 865 (1972).

■ Petitioner also contends that under ORS 677.170 (3) only evidence of activities outside the state of Oregon is relevant to a determination whether to grant an active license. Evidence of conduct within Oregon, he argues, is therefore irrelevant and inadmissible.

The Bill of Particulars[®] sets forth six alleged acts of petitioner, only two of which relate to alleged improper conduct outside Oregon. Petitioner argues that evidence as to the other four is inadmissible as being outside the scope of the Board's determination. We do not agree.

---

[®] The allegations of the Bill of Particulars may be summarized as follows:

I

Treating patients at the Astoria Clinic notwithstanding prior notification that he could not practice until an active license was issued.

II

Falsely informing the Board under oath that he had not been denied an active license in another state (Minnesota).

III

Falsely informing the Board under oath that no claim for malpractice against him had ever been settled.

IV

Petitioner was removed from a position with a federal agency in Oklahoma for misuse of government aircraft, certifying after an inadequate medical examination, misuse of official title, duty time and government materials, sending a letter to the President of the University of Oklahoma, containing unfounded statements, which embarrassed his employer.

V

Falsely informing the Board under oath that he had been cleared for licensure in Kansas.

VI

Failing to live up to a contractual commitment to the Scripps Institute of Oceanography, San Diego, California.

■ Under ORS 677.170 (3), the Board may deny active registration to an inactive licensee if his conduct during his absence was such that the Board would have denied the petitioner an initial license. ORS 677.100 (1) (e) provides that an applicant for an initial license must prove good moral character. Therefore, the Board may issue an active registration only if the applicant establishes that his conduct since becoming inactive has been consistent with good moral character.

The term "good moral character" is not defined in our medical practice act. Therefore we must look elsewhere for a definition of that term.

In *State v. Louisiana State Board of Medical Examiners,* 238 La 502, 115 So2d 833 (1959), the court, in defining the above term under a Louisiana statute requiring that an applicant for a license to practice medicine be "of good moral character," said:

> "The Legislature has not defined good moral character but this term is generally well understood by the courts, even though the term itself is unquestionably ambiguous and may be defined in many different ways. However, no great difficulty is encountered as to the true meaning of the term when applied to the professions of law or medicine. It has been said that the term may be broadly defined to include the elements of simple honesty, fairness, respect for the rights of others and for the laws of State and Nation. See Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 * * *." 238 La at 515, n 2, 115 So2d at 839.

Some of the conduct alleged in the Bill of Particulars, if proved, could establish violations of ORS 677.080 (1) and (4). These violations could constitute grounds for denial of an initial license, ORS 677.100 (1) (e), as well as suspension or revocation of an active

license, ORS 677.190 (1), (9) and (19). It follows that this conduct could constitute grounds for denial of an active registration to an inactive licensee. ORS 677.-170 (3). For this reason we conclude that the inquiry contemplated by ORS 677.170 (3) includes all conduct of petitioner, *within as well as without* the state, from the time his license registration was changed to inactive, to and including the date of the affidavit filed with the request for active registration. Therefore, evidence pertaining to conduct within Oregon is relevant and admissible.

Petitioner also assigns as error the admission of certain documentary evidence pertaining to conduct outside of Oregon. Petitioner argues that this evidence is inadmissible as hearsay.

■ This evidence consisted of certified copies of petitioner's application for licensure in Minnesota, the minutes of the Minnesota Board meeting at which the application was denied, and a document entitled "Notification of Personnel Action" from petitioner's personnel record with a federal agency in Oklahoma. These documents are public writings, ORS 677.250,[④] ORS 43.010 and 43.020, and are therefore admissible. ORS 43.330; *Finchum v. Lyons,* 247 Or 255, 428 P2d 890 (1967); *State v. Wikum,* 6 Or App 405, 488 P2d 815, Sup Ct *review denied* (1971).

Petitioner further assigns as error the action of the hearing officer in issuing commissions to take depositions of three out-of-state witnesses. Petitioner objected on the ground that a hearing officer does not have authority to issue such commissions.

■ It is of course a settled principle of law that

---

④ *See also,* MSA § 147.01.

administrative agencies do not have the general judicial powers of a court. They are limited to those powers conferred by statute, either expressly or by necessary implication. *Board of Medical Examiners v. Buck,* 192 Or 66, 82, 232 P2d 791 (1951), 200 Or 488, 258 P2d 124 (1953), *appeal dismissed* 346 US 919 (1954). ORS 183.425 provides that depositions may be taken "in the manner prescribed by law for depositions in civil actions." This language, the Board argues, grants administrative agencies the same authority to order depositions of out-of-state witnesses as the court has under ORS 45.320.

■ We agree with the Board that ORS 183.425, by necessary implication, permits the hearing officer to issue commissions for the taking of out-of-state depositions. *Cf., Bernard v. Bd. of Dental Examiners,* 2 Or App 22, 465 P2d 917 (1970) (in-state depositions).

Petitioner also assigns as error the following:

■ Before issuing its final Order of Denial, the Board did not serve petitioner with proposed findings and order, nor grant petitioner an opportunity to file exceptions to the findings and order. However, petitioner did file a petition for rehearing and reconsideration, listing his exceptions to the Board's findings, conclusions and order. Under both ORS 183.460 and Oregon Administrative Rules, ch 847, § 60-005 (6), the respondent is not required to serve a petitioner with proposed findings and order unless a majority of the Board did not consider the record. The Board's order, on its face, indicates that the entire Board reviewed the record before rendering its decision. Petitioner has not shown that a majority of the Board did not consider the record. Therefore, as we recently held in *Von Weidlein/Northwest Bottling v. OLCC,* 16 Or

App 81, at 90, 517 P2d 295 (1973), Sup Ct *review denied* (1974), this contention is without merit.

Having reviewed the entire record we conclude that the Board's order, except as hereinafter noted, is supported by reliable, probative and substantial evidence as required by ORS 183.480 (7)(d). *Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963) ; *Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554 (1973) ; *Sch. Dist. No. 48 v. Fair Dis. App. Bd.,* 14 Or App 634, 514 P2d 1114 (1973).

■ The evidence established that (1) petitioner did practice medicine at the Astoria Clinic on August 3 and 4, 1971, without an active license, contrary to ORS 677.080 (4), after having been warned that he could not do so; (2) petitioner made false and misleading statements in his affidavit for active registration, contrary to ORS 677.080 (1). As in *Board of Medical Examiners v. Mintz,* supra, proof of such conduct in direct violation of the medical practice act would establish lack of good moral character without the necessity of expert opinion outside the Board of Medical Examiners to support the conclusion. *Accord: Ward v. Ore. State Bd. of Nursing,* supra. The conclusion necessarily follows from (1) and (2) above that petitioner did not establish good moral character as required by ORS 677.100 (1)(e).

■ As to the charges based on petitioner's removal from a position with a federal agency in Oklahoma, we conclude that the proof is insufficient to establish lack of good moral character on this account. The evidence here consisted only of a certified copy of petitioner's personnel record with the agency listing the matters referred to in n 3, para IV, and petitioner's own testimony giving his version of the affair. A mere listing

of the purported reasons for petitioner's removal would be insufficient. Without additional proof of what the conduct actually consisted, we cannot say that this establishes lack of good moral character as a matter of law.

■ Likewise, we cannot sustain respondent's action on the basis of the charge arising out of petitioner's disputed employment contract with the Scripps Institute in San Diego. That contract was apparently rescinded by mutual consent. While an official of the Institute testified that defendant had failed to live up to his contractual commitment, there was evidence from which it could be inferred that petitioner's failure to perform fully was because he was unable to obtain assurance from Scripps of future permanent employment with a substantial increase in salary. Where the contract was rescinded by mutual consent, we cannot say that petitioner's actions demonstrated a lack of good moral character justifying refusal to issue a license.

One more assignment must be considered. At the beginning of the hearing, the hearing officer announced that the Chairman of the Board of Medical Examiners had disqualified himself from all participation in this case. The Board's Findings of Fact, Conclusions of Law and Order of Denial was signed by the chairman, Dr. Kostol. This order, on its face, indicates that Dr. Kostol participated in the final determination. The opening paragraph of the order reads in part:

"* * * The Board having reviewed the transcript of the hearing and now being fully apprised in the premises, does hereby enter the following * * *"

A similar issue was presented in *State v. Nagel,* 185 Or 486, 202 P2d 640 (1949), and *Creel v. Shadley,* 266 Or 494, 513 P2d 755 (1973). In *Nagel,* the presiding judge disqualified himself from a criminal trial, but thereafter excused jurors from the jury panel and ordered the summoning of replacement jurors. The excused jurors had fulfilled their required duty; therefore the court found that these were "ordinary ministerial acts performed by the judge in administering the business of his court." 185 Or at 499.

In *Creel,* the Supreme Court reversed a civil action wherein the disqualified presiding judge excused two jurors from the jury panel. The court found that the judge excused the jurors for prejudice. Therefore the judge was participating in the qualification of jurors and was not performing a ministerial function. 266 Or at 497-98. The court said that a judge who is disqualified in a case is without authority to act further in any judicial capacity involving the case. 266 Or at 497. The analogy in the present case is much closer to *Creel* than to *Nagel.*

Where, as here, an administrative body is charged with the duty to render a quasi-judicial decision, it should do so with the outward indicia of fairness as well as the actuality thereof. We conclude that Dr. Kostol should not have participated in any manner after disqualifying himself. If in fact Dr. Kostol did not participate in the Board's determination, the Order of Denial should have been signed by the vice chairman or a chairman pro tem rather than Dr. Kostol.[6]

---

[6] We note that the vice chairman, Dr. Sprang, signed the Bill of Particulars in this case.

We find petitioner's other assignments to be without merit.

Reversed and remanded for further proceedings not inconsistent with this opinion.