Argued July 20, reversed and remanded September 26, 1977

RANDY FRITZ, *Petitioner,*
*v.*
OREGON STATE PENITENTIARY, *Respondent.*
(No. 12-76-259, CA 7669)
569 P2d 654

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for petitioner. With her on the brief were Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

This is an appeal under ORS 421.195[1] from an order of the Superintendent of the Oregon State Penitentiary affirming the decision of the disciplinary committee. Petitioner was found guilty of disobedience of a direct order in violation of the Corrections Division's Rules and was required to serve six months in isolation and forfeit 180 days statutory good time. Petitioner contends that he was denied a fair hearing as required by ORS 421.190 and due process because one of the members of the committee was biased.

The record is not clear. Viewing the facts most favorably to petitioner, it appears that Steve Gassner, a member of the OSP staff and the disciplinary committee, had interviewed the complaining staff member prior to the hearing to determine whether she might wish to withdraw her complaint. Gassner concluded from the interview "* * * in light of what she told me about this incident that I agree with her decision" not to withdraw. He made no mention of his prior investigation at the hearing. Petitioner was the only witness at this hearing. He was questioned primarily by other committee members except for the following colloquy between petitioner and Gassner:

"GASSNER: Well, what it comes down to Randy is keep your nose out of that business.

---

[1] ORS 421.195 provides as follows:

"If an order places an inmate in segregation or isolation status for more than seven days, institutionally transfers him for disciplinary reasons or provides for noncertification to the Governor of a deduction from the term of his sentence under paragraphs (a) and (b) of subsection (1) of ORS 421.120, the order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 30 days of the order for which review is sought. The division shall transmit to the court the record of the proceeding, or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the division. The court may affirm, reverse or remand the order on the same basis as provided in paragraphs (a) to (d) of subsection (7) of ORS 183.480. The filing of the petition shall not stay the division's order, but the division may do so, or the court may order a stay upon application on such terms as it deems proper."

"FRITZ: Okay, well everyone was hot, Steve, everyone man."

The administrative organization of OSP is similar to many state agencies. The Administrator of the Corrections Division is charged with overall responsibility to "govern, manage and administer" the state correctional institutions. ORS 179.040. He in turn appoints a Superintendent who is the chief executive officer for the penitentiary. ORS 421.016. The Superintendent appoints all staff members and they are responsible to him for the operation of the penitentiary. The Administrator promulgates rules relating to conduct and the disciplinary procedures applicable to inmates. Pursuant to these rules the Superintendent appoints the chairman and members of the disciplinary committee. The committee holds hearings on alleged infractions and imposes sanctions. The disciplinary committee's decision is automatically reviewed within five days by the Superintendent who must then enter an order affirming, modifying or reversing the committee's action.[2] An inmate may appeal the order to the Court of Appeals. ORS 421.195. The scope of review is the same as that for a contested case under the Administrative Procedures Act, ORS 183.480.

This entire administrative scheme contemplates a tight chain-of-command from the Administrator to the Superintendent and to the staff. The Administrator and Superintendent have the ultimate responsibility for promulgating prison rules and for investigating, prosecuting and adjudicating violations of those rules. Neither the disciplinary committee nor the Superintendent can realistically be viewed as disinterested tribunals. They clearly have a vested interest in the prison's operation.

■ In *Wolff v. McDonnell,* 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974), the United States Supreme Court rejected the contention that a prison disciplinary committee was not sufficiently impartial because its

[2]Corrections Division Procedures for Disciplinary Action, Rule VI, 1.

membership was drawn from the line staff of the prison. It is also well established that due process does not require a formal separation of the investigative functions from the adjudicative or decision making functions of an administrative agency, nor does it preclude those who perform the latter from participating in the investigative phase. *Withrow v. Larkin,* 421 US 35, 95 S Ct 1456, 43 L Ed 2d 712 (1975); *Federal Trade Comm. v. Cement Institute,* 333 US 683, 68 S Ct 793, 92 L Ed 1010 (1948); *Palm Gardens, Inc. v. OLCC,* 15 Or App 20, 514 P2d 888 (1973), Sup Ct *review denied* (1974).

Here the evidence indicates that a committee member not only participated in the investigative stage, but also arrived at a degree of prejudgment resulting from that investigation. In *Withrow v. Larkin, supra,* the United States Supreme Court stated as dictum that "a biased decision-maker [is] constitutionally unacceptable." 421 US at 47. The dictum does not square with the holding if the Court intended to follow the dictionary definition of "bias." The term means merely "an inclination of temperament or outlook." Webster's Third New International Dictionary 211 (1971).[3] In *Withrow,* the members of the Wisconsin Examining Board conducted an investigation of a doctor and then scheduled a contested case hearing to determine whether the doctor's license should be suspended. The district court enjoined the proceedings

---

[3] "* * * If, however, 'bias' and 'partiality' be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will. The human mind, even at infancy, is no blank piece of paper. We are born with predispositions; and the process of education, formal and informal, creates attitudes in all men which affect them in judging situations, attitudes which precede reasoning in particular instances and which, therefore, by definition are prejudices. Without acquired 'slants' pre-conceptions, life could not go on. Every habit constitutes a pre-judgment; were those pre-judgments which we call habits absent in any person, were he obliged to treat every event as an unprecedented crisis presenting a wholly new problem he would go mad. Interest, points of view, preferences, are the essence of living. Only death yields complete dispassionateness, for such dispassionateness signifies utter indifference * * *." *In Re Linahan,* 138 F2d 650, 651, 652 (2nd Cir 1943).

because the members of the Board had participated in the prior investigation. The Supreme Court reversed, holding that the Board's procedures did not violate due process. As a result of their prior investigation, the Board members obviously made some prejudgment and had an inclination of outlook. For what other reason would they have initiated the contested case proceeding.

In attempting to ascertain what is constitutionally unacceptable bias, some writers and courts have attempted to analogize to the rules for disqualification of judges. *See,* 2 Davis, Administrative Law, Chapter 12 (1958). This analogy is of questionable utility because of the inherent differences between judicial and administrative adjudication. Under the former there is a total separation of the judging function from the investigatorial and prosecutorial functions as constitutionally mandated under the doctrine of separation of powers. In a jury trial, the trier of fact comes to the proceeding without any previous knowledge of the facts. In theory, the jury's only bias is an amalgam of the community. Similarly, where the judge sits as the trier of fact he usually does so without previous association with the evidence. Even in those cases where he has had previous association, such as on retrial, by both law and custom he is required to strictly confine himself to the record before him. However, an individual judge may have a bias arising out of his general experience and background.

■ In contrast, an administrator is usually selected because of, and his career is dependent upon, his commitment to the policy which he is charged to administer. The traditional justificiations for administrative adjudications are those of administrative expertise and the avoidance of the cumbersome machinery of a court trial. Both imply a degree of prior knowledge and consequent prejudgment by administrative agencies, not only on matters of policy but also on questions of fact. In the present case the members of the disciplinary committee clearly have a vested

interest in maintaining order and in promoting the institution's correctional programs. As regular members of the prison staff, they are personally acquainted with the inmates and other staff members and thus are in a position to make tentative prejudgments on questions of credibility and appropriate sanctions or treatment. Presumably they make those prejudgments.

■ Due process does not require an absence of these kinds of biases that are inherent in the administrative process. Indeed, abstract fairness may be better served through such a process. It would not be unreasonable to expect more arbitrary results from a panel of wholly disinterested, and thus unknowledgeable, persons who are not intimately acquainted with the personalities and operation of the prison. In *Wolff v. McDonnell, supra,* the Supreme Court pointed out the pitfalls of making prison disciplinary proceedings an adversary trial—both from the standpoint of undermining correctional programs and in endangering the safety of the inmates. In *Wolff,* the Court stated that due process entitles the inmate to notice and to be heard. The right to be heard implies a corollary duty of prison officials to listen and consider, but this does not mean that they must listen with a total absence of prejudgment.

> "Agencies are required to consider in good faith, and to objectively evaluate, arguments presented to them; agency officials, however, need not be subjectively impartial." *Carolina Environmental Study Group v. United States,* 510 F2d 796, 801 (CA DC 1975).

In *Federal Trade Comm. v. Cement Institute, supra,* respondent contended that the FTC was biased in bringing an antitrust case attacking the basing point pricing system of the cement industry. Prior to instituting the proceeding, the commission had made an "ex parte investigation" into the industry pricing system and several, if not all, members of the commission had publicly testified before Congress that they believed that base point pricing was illegal. The

Supreme Court held that the commission members were not required to disqualify themselves by virtue of their prior investigation. The Court stated:

"* * * [T]he fact that the Commission had entertained such views as the result of its prior *ex parte* investigations did not necessarily mean that the minds of its members were irrevocably closed on the subject of the respondents' basing point practices. Here, in contrast to the Commission's investigations, members of the cement industry were legally authorized participants in the hearings. They produced evidence—volumes of it. They were free to point out to the Commission by testimony, by cross-examination of witnesses, and by arguments, conditions of the trade practices under attack which they thought kept these practices within the range of legally permissible business activities." 333 US at 701.

The record in this case does not indicate that Gassner's mind was necessarily closed to petitioner's arguments. To the contrary, his remarks concerning his interview with the complaining staff member indicate that "from what she told [him]", he concluded that the charge should not be withdrawn. This statement does not indicate that his mind was closed from hearing what others might have to say. As to Gassner's remark during the hearing, at most it indicates that he had reached a tentative conclusion based upon the evidence presented at the hearing. The evidence does not show that whatever prejudgments or preconceptions Gassner may have had, he was biased to a degree that is constitutionally unacceptable. However, this conclusion does not end the inquiry as to whether petitioner was afforded a fair hearing as required by due process, statute or in compliance with the Corrections Division rules.

The record indicates that Gassner made an investigation prior to the hearing and probably reached certain tentative conclusions from that investigation. We are unable to determine whether his ultimate conclusion was based in any part on evidence derived from that investigation. There is no indication in the

transcript of the hearing that Gassner made such investigation. The United States Supreme Court decisions do not provide any definitive guidance.[4] However we do not need to reach the due process question.

ORS 421.190 provides:

> "Evidence may be received at disciplinary hearings even though inadmissible under rules of evidence applicable to court procedure and the division shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing."

Pursuant to the statute, Corrections Division Rule II, 3, a(1), OAR 40-112, provides:

> "a. The powers of the disciplinary committee shall be limited to
>
> "(1) Determination *at a hearing* if any of the rules for inmate conduct have been violated by a particular inmate, * * *" (Emphasis added.)

And Rule IV, 5, OAR 40-114, relating to the conduct of the disciplinary hearing, provides:

> "The disciplinary committee shall consider that information which is of such reliability as would be considered by reasonable men in the conduct of their affairs."
> "* * * * *"

This rule goes on to specifically detail the type of evidence that is admissible and how such evidence shall be admitted. Rule IV, 6, c provides:

> "After receiving the evidence the disciplinary committee may take the matter under advisement."

The clear import of these rules is that only evidence presented at the hearing and heard by the full committee shall be considered in making a decision. Accordingly, members of the committee who have made a prior investigation, or otherwise are aware of evidence

---

[4]That Court has indicated that because of the unique problems inherent in prison discipline it is constitutionally permissible for a prison disciplinary committee to consider evidence not presented at the hearing. *Baxter v. Palmigiano,* 425 US 308, 96 S Ct 1551, 1560, n. 5, 47 L Ed 2d 810 (1976).

relating to the charge, are under a duty to make that fact known at the hearing and to set forth the evidence if that evidence is to be considered by the member who made the investigation.[5] It may have been that the only result from Gassner's pre-hearing investigation was a repetition of the statements of the complaining witness introduced at the hearing. Even so, Gassner should have placed into the record the fact of the investigation.

Reversed and remanded.

**SCHWAB, C. J.,** concurring.

I agree with the majority that the relevant rules governing the conduct of disciplinary hearings were violated, and that reversal is required. I therefore do not think it necessary to reach the constitutional due process questions which the majority discusses at length, and do not necessarily agree with all the implications contained in that discussion.

---

[5]The record of the hearing indicates that another member of the committee, Mr. Whitley, had also made an investigation of the charge prior to the hearing. Petitioner did not assign as error his investigation.