Argued September 28, 1978, affirmed January 15, reconsideration denied
February 27, Supreme Court review denied June 13, 1979
286 Or 637

# GREGG, *Petitioner,*

### *v.*

# OREGON RACING COMMISSION, *Respondent.*

## (CA 10440)

588 P2d 1290

Ted E. Runstein, Portland, argued the cause for petitioner. With him on the brief was Kell, Alterman & Runstein, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

Petitioner appeals an order of the Oregon Racing Commission suspending his horse owner's license, asserting invalidity due to lack of substantial evidence and to denials of due process.

On September 1, 1977, the Oregon Racing Commission served petitioner with a notice proposing to revoke his horse owner's license for having made incorrect statements on required registration forms as to the ages and sires of his horses, Jay Hawk Jerry and Falcon Lark. A hearing was held before the Commission on October 11 and December 13, 1977. On February 21, 1978, the Commission issued a final order suspending petitioner's license and imposing other sanctions. The order was supported by the following ultimate findings of fact:

"1. The horse Jay Hawk Jerry is not by Diplomatic out of Busher's Lark, as registered with the Jockey Club on Certificate of Foal Registration No. 74-5293 and as represented to the racing public.

"2. The horse Falcon Lark is not by Every Inch a King out of Busher's Lark, as registered with the Jockey Club on Certificate of Foal Registration No. 75-6392 and as represented to the racing public.

"3. The horse Jay Hawk Jerry was foaled prior to January 1, 1974, contrary to that shown on the registration.

"4. The horse Falcon Lark was foaled prior to January 1, 1975, contrary to that shown on the registration.

"5. Licensee deceived and misrepresented the ages and parentage of Jay Hawk Jerry and Falcon Lark to the people of the State of Oregon and the racing public."

### Substantial Evidence Contentions

Petitioner's first assignment of error is that ultimate findings of fact Nos. 3 and 4 are unsupported by substantial evidence.[1] The only evidence in the order

---

[1] Petitioner does not contest ultimate findings of fact Nos. 1 and 2. Blood tests conclusively established that his foal registration forms listed incorrect sires.

which supports them is described in finding of fact No. 8:

> "On September 19, 1977, Dr. Michael Shires, DVM, Oregon State University School of Veterinary Medicine, Corvallis, Oregon, examined the horses Jayhawk Jerry and Falcon's Lark and concluded that in 1977 they would have been four years old and three years old, respectively, for racing purposes."

The record reveals that Dr. Shires differed in the degree of conclusiveness he was able to reach with respect to the ages of the two horses. As to Jay Hawk Jerry, claimed on the registration form to be a three year old, he testified that he would put the age "around about four," but would have to allow for six months' error either way. In other words, if the horse's age was within the low side of the margin of error, it would be racing legally. If the horse's age was within the time which the witness considered probable or within the high side of the margin of error, then the horse's age was falsely stated. Thus, the Commission could infer from the expert testimony that it was more probable than not that the horse was racing improperly even though there was a possibility that it was racing properly.

■■ For expert medical opinion "to have any probative value it must advise the jury that the inference drawn by the doctor is more probably correct than incorrect." *Crawford v. Seufert,* 236 Or 369, 388 P2d 456, 2 ALR3d 354 (1964). There is little authority as to the question of where the line is to be drawn on a scale between 50/50 probability and complete conclusiveness. The Supreme Court has held that a physician's expert testimony as to the causation of an injury which allowed a 15 percent probability that the accident did not cause the injury was not so speculative that the evidence should have been withdrawn from the jury. *Palmore v. Kirkman Laboratories,* 270 Or 294, 304, 527 P2d 391 (1977). *Palmore* would not allow us to say as a matter of law that there was no evidence from which the commission could conclude that Jay

Hawk Jerry was racing at an improper age. *Desler v. Lane County Commissioners,* 27 Or App 709, 713, 557 P2d 52 (1976). We conclude therefore that finding of fact No. 3 was supported by substantial evidence.

■ As to the age of the younger horse, Falcon Lark, claimed on the registration form to be a two year old, Dr. Shires' testimony was more conclusive. Mouthing[2] revealed a chronological age of at least three years with the possibility of three and a half years. Therefore, finding of fact No. 4 was also supported by substantial evidence.

■ As a subpart of his first assignment of error, petitioner argues that findings of fact Nos. 16 and 17[3] are not supported by either substantial evidence or formally noticed facts. This argument is overcome by the last sentence of ORS 183.450(4), which provides:

> "* * * Agencies may utilize their experience, technical competence and specialized knowledge in the evaluation of the evidence presented to them."

Findings of fact Nos. 16 and 17 deal with the fact that bettors customarily rely on a horse's age and parentage in placing their bets. Although there was no

---

[2] Mouthing is an examination of the condition and wear of a horse's teeth to estimate its chronological age. The horse's racing age is not the same as its chronological age. Regardless of the date a horse was actually born, every horse is assigned for racing purposes a birthdate of January 1 of the year of its birth.

[3]
"16. A licensee who enters a horse which is older than the conditions set forth for the race misrepresents the horses' true age to the racing and wagering public and commits a fraud and deceit upon the public who may lose their wagers due to such conduct.

"17. The racing public will many times place wagers upon a horse based upon its parentage. This information must be accurately set forth in the racing program. The sire and dam listed with the Jockey Club and in horse racing books for Jayhawk Jerry and Falcon's Lark were based upon information supplied by licensee and in fact was not correct information. Licensee misrepresented these horses' sire and dam to the Jockey Club, this Commission and the racing public who relied upon information furnished by licensee, and were deceived as to the true sire and dam."

evidence offered on this point, it is a subject with which the Commission may be assumed to be familiar.

## Due Process Contentions

■ Petitioner's second, third and fourth assignments of error deal with alleged denials of due process in his contested case hearing. Although each arises out of separate facts, all are ultimately based on the notion that the combination of investigatory and adjudicative functions in a single agency is unfair. As we explain in detail below, such claims must show with particularity that a fair adjudication was in some important respect denied. *See* Cooper, State Administrative Law, Vol. I, ch XI, § 5(c) at 340-342 (1965). Davis, Administrative Law Treatise, ch 13, at 171, *et seq.* (1958).

■■ Petitioner's fourth assignment of error is that the Commission engaged in prohibited ex parte contacts. These occurred at a pre-hearing executive session of the Commission at which the state's veterinarian and a representative of the Attorney General's office were present, and, during the hearing, at certain recesses for lunch, coffee and rest breaks. Petitioner relies on the statement in *Fasano v. Washington Co. Comm.,* 264 Or 574, 588, 507 P2d 23 (1973), that one has a right to an impartial tribunal, for the proposition that ex parte contacts are per se violations of due process.[4] We specifically rejected this contention in *Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 628, 536 P2d 435 (1975), following *Withrow v. Larkin,* 421 US

---

[4]To the extent petitioner's assignment of error relies on the APA as a codification of the case law, his argument is without merit. The Oregon legislature chose not to adopt section 13 of the Revised Model State APA which specifically prohibits ex parte contacts by members of an agency. That section reads as follows:

"Unless required for the disposition of *ex parte* matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate. An agency member (1) may communicate with other members of the agency, and (2) may have the aid and advice of one or more personal assistants." (Footnote omitted.)

35, 95 S Ct 1456, 43 L Ed 2d 712 (1975). *See also, Fritz v. OSP,* 30 Or App 1117, 569 P2d 654 (1977). The work of administrative agencies often involves a combination of adjudicative and investigative functions. Whether good or bad, it is simply the way many agencies must work if they are to perform their statutory missions. The fact that members of an agency have both investigated and adjudicated a particular controversy simply shows that they have performed their statutory duties. "Without a showing to the contrary, state administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *United States v. Morgan,* 313 US 409, 421 (1941), quoted with approval in *Withrow v. Larkin,* 421 US at 55. Here petitioner had made no showing of actual prejudice or bias by the agency members charged with adjudication and has therefore shown no cause for relief.

■ Petitioner's third assignment of error is that the Commission's consideration of tips from a confidential informant deprived him of the right to confront and cross-examine adverse witnesses. The information in question was a series of reports made by a Commission investigator following an anonymous telephone tip that the ages of Jay Hawk Jerry and Falcon Lark had been falsified. This information was the original impetus for the Commission's investigation, and it was only when the information had been largely corroborated by blood tests and mouthing that the Commission decided to initiate proceedings for the revocation of petitioner's license. At the hearing, results of the blood tests and mouthing were introduced, and petitioner was afforded full opportunity to cross-examine all witnesses who testified on these matters. The Commission's final order relied solely on this evidence. The order makes no mention of the confidential reports, and there is no other indication that they were relied upon by the Commission. Therefore, petitioner

has no due process right to examine them as part of the evidence against him.[5]

The question remains whether petitioner has a right to examine the reports as part of the preliminary investigation leading to his contested case hearing. The applicable principle of law is that a party to a contested case hearing has the right to be generally informed of the case against him. But this principle is not without limits. As stated in Cooper, Administrative Law, Vol 2, ch 10, § 2(C) at 363 (1965):

> "[A party] does not have a right to delve and pry into all the records of the agency, or to examine secret reports of the agency's investigators * * *."

The reports were no part of the state's case and petitioner makes no claim that they were needed as part of his case. Hence, petitioner has shown no ground of entitlement to the reports.

Petitioner's second assignment of error is that the Commission considered additional evidence following the hearing without affording him an opportunity to rebut or explain it. He contends this violated due process as well as ORS 183.450(2), which limits evidence used in determining a contested case to evidence on the record, and ORS 183.450(3), which guarantees the right to cross-examine adverse witnesses and to present rebuttal evidence.

The additional information consisted of a computer print-out listing all thoroughbreds foaled between 1974-76, and a blood test of a horse not in the present dispute. The Commission's order makes no reference to either item. There is no indication that the Commission relied on them in coming to its order. The mere fact that the Commission receives information relating to the subject of its regulatory authority does not

---

[5] Petitioner relies upon *McNeill v. Butts,* 480 F2d 314 (4th Cir 1973), which upheld the constitutional right to be informed of the identity of and to cross-examine confidential informants is distinguishable. In that case, unlike this one, the agency presented no evidence at all except that provided by confidential informant.

of itself indicate that the Commission was impermissibly biased against a petitioner appearing in a related contested case. *See, Fritz v. OSP,* 30 Or App 1117, 1122, *et seq.* On the contrary, it is reasonable to expect more informed decisions from agencies which vigorously pursue their investigatory roles. On judicial review of an agency order, we do not look to the additional information of which the agency may have been aware, but rather to that information which affected the agency's decision. Where, as here, the order reflects findings based upon evidence in the record, we will not presume that the decision is based instead or also upon facts outside of those in the order. Without a particularized showing as to how the agency's information-gathering activities interfered with its decision-making process, no due process issue is presented.

Petitioner's further claim that the Commission's receipt of the information violated statutory procedure is not grounds for reversal or remand without a showing that petitioner's substantial rights were violated. ORS 183.482(8)(a).

Absent a particularized showing of prejudice arising from any of the incidents complained of, petitioner is not entitled to a reversal or remand.

Affirmed.