Argued and submitted February 27, reversed and remanded with instructions May 27, reconsideration denied August 7, petition for review denied September 3, 1980 (289 Or 588)

# BOUGHAN,
*Petitioner,*
*v.*
# BOARD OF ENGINEERING EXAMINERS,
*Respondent.*

(CA 15358)

611 P2d 670

Gary M. Carlson, Portland, argued the cause and filed the brief for petitioner.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

THORNTON, J.

Schwab, C. J., dissenting opinion.

## THORNTON, J.

Petitioner Boughan petitions for judicial review of an order of respondent Board of Engineering Examiners revoking his certificate as a professional engineer.

The Board brought eight charges involving eight different projects against petitioner, charging incompetence, gross negligence and violation of the rules of professional conduct in his practice as a professional engineer. The Board found petitioner guilty on all charges.

Petitioner contends the Board erred:

1) In denying petitioner's challenge to John Merrifield's participation as a member of a six-member hearing panel. The challenge was based on Mr. Merrifield's having previously been employed on one of the projects from which the instant charges stem.

2) In finding substantial evidence in the record to support the allegations against petitioner; and

3) In revoking petitioner's certification as a professional engineer.

For reasons which follow we conclude that petitioner's first contention, namely, that the Board erred in overruling his challenge to Mr. Merrifield's participation as a member of the hearing panel, must be sustained. Of necessity this requires that this proceeding be returned to the Board for a new hearing, without Mr. Merrifield serving as a member of the hearing panel.[1] We therefore do not reach either of petitioner's remaining assignments.

As to the facts, it is sufficient here merely to state as follows: One of the engineering jobs petitioner was accused of mishandling was called the Mercier project. Petitioner challenged Mr. Merrifield on the grounds that Merrifield had been hired to serve on the Mercier

---

[1] This would not, of course, bar Mr. Merrifield from being called as a witness by either side.

project after petitioner had been discharged. The evidence indicates that after Merrifield assumed the responsibility for the Mercier project he contacted some of the persons who were involved and made certain changes in work previously approved by petitioner.

At the outset of the hearing, Mr. Merrifield stated that he had been "referred to the case because of my position with this Board." He assured the Board that the above contacts would not influence his judgment; that he could be objective and judge the case on the basis of what was presented at the hearing. On this basis, the Board then overruled petitioner's challenge and proceeded with the hearing.

Petitioner has the burden of showing actual prejudice or bias. *Grabenhorst v. Real Estate Division,* 43 Or App 287, 292, 602 P2d 1089 (1979), *rev den* (1980); *Gregg v. Racing Commission,* 38 Or App 19, 588 P2d 1290, *rev den* (1979).

The applicable rule concerning the duty of administrative officers to disqualify themselves according to 1 Am Jur 2d, Administrative Law, § 63, pp 859-60 (1961), is as follows:

> "Although an administrative agency cannot possibly be under stronger constitutional compulsions in respect to disqualify than a court *[Federal Trade Commission v. Cement Inst.,* 333 US 683, 68 S Ct 793, 92 L Ed 1010 (1948)]* the common law rule of disqualification applicable to judges extends to every tribunal exercising judicial or quasi-judicial functions." (Citing numerous cases.)

*But see* discussion on this subject in *Fritz v. OSP,* 30 Or App 1117, 1122, 569 P2d 654 (1977).

In most jurisdictions, an administrative officer exercising judicial or quasi-judicial power is disqualified or incompetent to sit in a proceeding in which he has a personal or pecuniary interest. *Re Heirich,* 10 Ill 2d 357, 140 NE2d 825, 67 ALR2d 827, *cert den* 355 US 805 (1976); *State ex rel Miller v. Aldridge,* 212 Ala 660, 103 So 835, 39 ALR 1470 (1925); *New Jersey State*

[290]

*Board of Optometrists v. Nemitz,* 21 NJ Super 18, 90 A2d 740 (1952); Annotation, 97 ALR2d 1210.

Where disqualification is mandated, the administrator must disassociate himself to avoid even the appearance of impropriety. *Campbell v. Bd. of Medical Examiners,* 16 Or App 381, 395, 518 P2d 1042, *rev den* (1974).[2]

In a number of jurisdictions, including Oregon, it has been held that disqualification for bias or interest will not result where the hearing body, or one of its members or subordinates, acting within the scope of their proper ministerial functions, participated in the investigation and filing of charges against the licensee. *Withrow v. Larkin,* 421 US 35, 95 S Ct 1456, 43 L Ed 2d 712 (1975); *Federal Trade Commission v. Cement Inst.,* 333 US 683, 68 S Ct 793, 92 L Ed 1010 (1948); *Palm Gardens Inc. v. OLCC,* 15 Or App 20, 514 P2d 888 (1973), *rev den* (1974).

In *Fritz v. OSP, supra,* an inmate of the penitentiary was charged with disobeying a direct order. He challenged a member of the disciplinary committee hearing his case. The grounds asserted were that the challenged person was on the penitentiary's staff and had interviewed the complaining employe in the course of investigating the charge. We noted that "[t]he evidence indicates that a committee member not only participated in the investigative stage, but also arrived at a degree of prejudgment resulting from that investigation." 30 Or App at 1121. Departing from the

---

[2] In *Campbell v. Bd. of Medical Exam.,* 16 Or App 381, 395, 518 P2d 1042, *rev den* (1974), which involved a proceeding to revoke a license to practice medicine, it appeared that at the beginning of the hearing the hearing officer announced that the chairman of the Board of Medical Examiners had disqualified himself from all participation in the case but that the Board's findings of fact, conclusions of law and order of denial was signed by the chairman notwithstanding. We reversed holding that the chairman should not have participated in any manner after disqualifying himself, saying:

"Where, as here, an administrative body is charged with the duty to render a quasi-judicial decision, it should do so with the outward indicia of fairness as well as the actuality thereof. * * *"

view taken in Am Jur 2d referred to above, we expressed the view that the rules governing disqualification for bias with respect to judges differ somewhat from those pertaining to administrators. A judge who has served as attorney in a particular case is required to recuse himself if that case subsequently comes before him as a judge.[3]

> "In contrast, an administrator is usually selected because of, and his career is dependent upon, his commitment to the policy which he is charged to administer. The traditional justifications for administrative adjudications are those of administrative expertise and the avoidance of the cumbersome machinery of a court trial. Both imply a degree of prior knowledge and consequent prejudgment by administrative agencies, not only on matters of policy but also on questions of fact. In the present case the members of the disciplinary committee clearly have a vested interest in maintaining order and in promoting the institution's correctional programs. As regular members of the prison staff, they are personally acquainted with the inmates and other staff members and thus are in a position to make tentative prejudgments on questions of credibility and appropriate sanctions or treatment. Presumably they make those prejudgments." *Fritz v. OSP,* 30 Or App at 1122-23.

Due process, we held, does not require an absence of the types of biases inherent in the administrative process. 30 Or App at 1123. Nevertheless, we reversed and remanded because there was no indication in the transcript of the hearing that the committee member

---

[3] Canon 3(c)(1)(a) and (b) of the Code of Judicial Conduct provides:

"C. Disqualification

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(b) he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a judge or such lawyer has been a material witness concerning it."

[292]

in question had not relied on prior acquired information in reaching his conclusion of guilt after the disciplinary hearing.

"The clear import of these rules is that only evidence presented at the hearing and heard by the full committee shall be considered in making a decision. Accordingly, members of the committee who have made a prior investigation, or otherwise are aware of evidence relating to the charge, are under a duty to make that fact known at the hearing and to set forth the evidence if that evidence is to be considered by the members who made the investigation. It may have been that the only result from Gassner's prehearing investigation was a repetition of the statements of the complaining witness introduced at the hearing. Even so, Gassner should have placed into the record the fact of the investigation." (Footnote omitted.) 30 Or App at 1125-26.

As we observed in *Fritz,* due process standards respecting bias in a penitentiary situation, because of its "closed-system" character, differ from those applicable in ordinary administrative proceedings. While an absolute separation of judicial and investigatory functions is not required, an administrator's prior personal contacts with the parties or the particular factual context before the agency in a hearing may mandate disqualification. This is particularly true where such contacts occur when the person was acting in a capacity other than his capacity as an employe of the agency. *Transworld Airlines v. Civil Aeronautics Bd.,* 254 F2d 90 (DC Cir 1958) (a member of the Civil Aeronautics Board was held to be disqualified because he had been an attorney for one of the parties in the early stages of the case).

In the present case, Mr. Merrifield's involvement with the Mercier project came about, as we understand it, at the instigation of third parties. Merrifield was apparently approached and hired to replace petitioner, largely because of his position on the Board. He succeeded petitioner as project engineer, participated in investigating the project and recommended the taking

of corrective action. We assume, although the record does not reflect, that he was compensated for his services. Under the circumstances, we believe he should have disqualified himself.

Reversed and remanded with instructions.

**SCHWAB, C. J.,** dissenting.

I do not believe that petitioner submitted sufficient facts on the record to support the majority's conclusion that the Board erred in denying petitioner's motion for the disqualification of Mr. Merrifield.

Petitioner was retained to do engineering work on the "Mercier project." "Mercier" is the name of a family that owns a single-family residence. Their "project" was the construction of a retaining wall in their yard. Petitioner prepared plans for a retaining wall and submitted them to the city for issuance of a building permit. The permit was issued in reliance on the plans. Later, before work began on the retaining wall, city officials did an on-site inspection. This lead them to the conclusion that the plans were inadequate, and they canceled the building permit.

Merrifield, the member of the Board whose participation is here challenged, had some contact with the Merciers after the building permit was canceled. However, contrary to the majority, I find almost no information in the record about the nature of that contact — and what information there is makes that contact seem inconsequential to me.

Merrifield had no contact with the Merciers until after they had dismissed petitioner. Merrifield so stated.[1] The Board so found.[2] Petitioner does not challenge Merrifield's statement or the Board's finding.

---

[1] "[Question:] Mr. Merrifield, did you have anything to do with Mr. Boughan being relieved as the consulting engineer for the Merciers?

"MR. MERRIFIELD: None whatsoever."

[2] The Board found: "Neither Merrifield nor [his] firm were involved with Boughan's client [i.e., the Merciers] until the client dismissed Boughan."

[294]

When petitioner challenged Merrifield's participation, he was asked to state his understanding of Merrifield's role in the Mercier project. Petitioner responded:

> "The point I want to make is that several weeks ago, Paul Christerson informed me that John Merrifield would be eliminated from the Board due to a conflict of interest. Well the condition hasn't changed. I have a memory like an elephant, and this is what I heard in phone conversation and I made a note of it and I know why, because of the background. I have appeared in court, usually against John. He's a fine engineer, but he is a human being subjecting himself to too much stress. I wouldn't want to be subjected to that much stress. To be involved in one of the projects and to be judging it on the other hand. It is not a true test of the human individual."

Petitioner was invited to "'show how or that Merrifield has in some way derived a puninary [sic] gain'" from the Mercier project.[3] Petitioner responded:

> "Yes, he was in it early in the game. Actually, this permit was revoked. It is the first time I ever had a permit revoked. There was some people at City Hall who went out and hired some people, and eventually they gave some referrals and his firm Merrifield and Bonney, ended up redesigning the thing. Honestly, think that that the people in City Hall had designed it by the seat of the britches and were trying to find someone that way. I think he was pretty well involved in it. Also City Hall knows what his role is."

This is *all* of the possibly relevant information that was before the Board when the presiding officer ruled: "The Board is not going to accept the challenge *at this time.*" (Emphasis supplied.)

The majority apparently relies upon subsequently offered testimony in many respects:

> "The evidence indicates that after Merrifield assumed the responsibility for the Mercier project he

---

[3] There are numerous typographical errors in the transcript. In context, I understand the question about "puninary gain" to have really meant "pecuniary gain."

[295]

contacted some of the persons who were involved and made certain changes in work previously approved by petitioner." 46 Or App at 290.

"[Merrifield] succeeded petitioner as project engineer, participated in investigating the project and recommended the taking of corrective action." 46 Or App at 293-94.

Either I misunderstand the majority, or I submit that most of these statements are not supported by the record.[4] But even assuming the factual accuracy of the majority's observations, I submit it is unfair to the Board of Engineering Examiners and to Merrifield for the majority to rely on information developed in the record *after* the Board had rejected the objection to Merrifield's participation "at this time" without any showing that petitioner later renewed his objection.

Furthermore, and still assuming the majority accurately reports the facts, I fail to see — and the majority certainly does not precisely identify — the legal necessity for Merrifield's disqualification in the context of the charges against petitioner. The essence of the charges involving the Mercier project is that petitioner's *plans* were defective, not his *execution* of the project. See, n 4, *supra.* The Board found, for example, that petitioner's

"plan shows an eighteen foot elevation difference from the top of the proposed H-pile wall to the top of

---

[4] I find no basis in the record for the assertion that Mr. Merrifield made "changes in work previously approved by petitioner" or "recommended the taking of correction action." The Board found: "Construction of the [Merciers' retaining] wall [according to petitioner's plans] *was never commenced.*" (Emphasis supplied.) So what "work previously approved by petitioner" or "recommended * * * corrective action" does the majority have in mind?

There is some implication in the record that Mr. Merrifield prepared new and different plans for a retaining wall for the Merciers. However, given both the city's conclusion, when it revoked the building permit issued in reliance on petitioner's plans, and the Board's implicit conclusion that the retaining wall designed by petitioner would not have performed its intended function, it is hardly fair to characterize completely new and different plans as "certain changes" in petitioner's work or recommended "corrective action."

[296]

the bank of Tyron Creek. Actual measurement of this difference was 34 to 38 feet."

Even if one of the factfinders were biased, how could that possibly influence a decision on something that can be objectively measured?

The burden to show disqualification is on the side that asserts disqualification. The only fair thing that can be said about this record is that petitioner showed that the Merciers, after they had discharged petitioner, retained Merrifield in some unknown capacity. I would hold that is insufficient to require Merrifield's disqualification, and therefore respectfully dissent.