FORELAWS ON BOARD,
*Petitioner,*

*v.*

ENERGY FACILITY
SITING COUNCIL,
*Respondent.*

(CA A38901)

734 P2d 370

Daniel W. Meek, Portland, argued the cause for petitioner. On the brief was Linda K. Williams, P.C., Portland.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Walter Perry, III, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Newman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner seeks review of a declaratory ruling by the Energy Facility Siting Council, ORS 183.410, that the site application, review and certificate requirements of ORS 469.553 are inapplicable to a uranium mill tailings disposal facility which the federal and state governments, through their respective Departments of Energy, have entered into a cooperative agreement to create and operate. Petitioner's principal assignment is that the Council erred in that conclusion. We agree, and we reverse and remand.

The tailings are a radioactive residue of uranium milling activities which took place near Lakeview in the late 1950's and early 1960's. The property which is the source of the tailings is no longer used for uranium-related operations. The cooperative agreement was entered into in June, 1984, under the authority, for the respective signatories, of ORS 469.559 and the Uranium Mill Tailings Radiation Control Act, 42 USC § 7901 *et seq,* § 2021 *et seq* (the federal act).

ORS 469.553 provides:

"(1)   Any person desiring to construct or operate a uranium mill or uranium mill tailings disposal facility after June 25, 1979, shall file with the Energy Facility Siting Council a site certificate application.

"(2)   The Energy Facility Siting Council shall review an application for a site certificate under this section using the procedure prescribed in ORS 469.350, 469.360, 469.370, 469.375, 469.380, 469.390 and 469.400, for energy facilities. The council is authorized to assess fees in accordance with · ORS 469.420 in connection with site certificates applied for or issued under this section."[1]

ORS 469.559(1) provides:

"Notwithstanding the authority of the Health Division pursuant to ORS 453.605 to 453.745 to regulate radiation sources or the requirements of ORS 469.525, the Energy Facility Siting Council may enter into and carry out cooperative agreements with the Secretary of Energy pursuant to Title I and the Nuclear Regulatory Commission pursuant to Title II of the Uranium Mill Tailings Radiation Control Act of 1978,

---

[1] "Person" is defined by ORS 469.300(16) to include "government agenc[ies]" and "any other entity, public or private, however organized."

Public Law 95-604, and perform or cause to be performed any and all acts necessary to be performed by the state, including the acquisition by condemnation or otherwise, retention and disposition of land or interests therein, in order to implement that Act and rules, standards and guidelines adopted pursuant thereto. The Energy Facility Siting Council may adopt, amend or repeal rules in accordance with ORS 183.310 to 183.550 and may receive and disburse funds in connection with the implementation and administration of this section."

The Council's ruling gave this explanation for its conclusion that ORS 469.553 does not apply:

"Reading ORS 469.559 and ORS 469.553 together, it is clear that the legislature did not intend to apply the site certificate process [of ORS 469.553] to the Lakeview remedial action. ORS 469.559 and ORS 469.553, [sic] set up two separate mechanisms for regulating uranium mill tailings disposal. Active milling operations and their associated tailings are subject to the site certificate process. Inactive or abandoned sites such as Lakeview may be handled directly by the government through the remedial action cleanup program outside the site certificate process. Congress has mandated that Lakeview shall be addressed through this process (42 USC § 7912(a)(1)).

"The process applicable to the Lakeview remedial action authorized in ORS 469.559 and [the federal act] is inconsistent with the siting process. ORS 469.559 requires [the Council] to act as a cooperative participant in the project. The site certificate process under ORS 469.553 would require [the Council] to act as a neutral and uninterested [sic] judge of the project. Application of the site certificate process to Lakeview would require [the Council] to be both an applicant for a site certificate and the judge of the application.[2] ORS 469.559 requires the use of federal standards in the cleanup at Lakeview. ORS 469.553 would impose state standards."

In its brief, the Council further explains the "active" - "inactive" distinction drawn in the ruling. It points out that Title I of the federal act, in connection with which the cooperative agreement was executed, is aimed at remedial measures for abandoned or inactive sites, while Title II of the act is concerned with regulation of existing or future mills.

---

[2] Although the Oregon Department of Energy is designated in the cooperative agreement as the contracting agency on behalf of the state, ORS 469.559 makes the Council the agency which has authority to enter into such agreements.

Although the Council acknowledges that the federal act does it more clearly, it argues:

> "In passing ORS 469.553 and 469.559, the Oregon legislature, like its federal counterpart, intended to distinguish between regulatory oversight of ongoing uranium mining and milling operations and the remedial disposal of abandoned mill wastes. A close look at the state statute shows that it reflects the federal dichotomy between active and inactive sites. Thus, ORS 469.553 addresses the construction and operation of mills and milling wastes. Construction and operation occur only at an active site."

Stated summarily, the Council's principal argument is that the site review requirements of ORS 469.553 apply only to disposal facilities connected with active milling and have no application to facilities established by the governments under ORS 469.559 to carry out disposal operations necessitated by inactive or abandoned mills.

The threshold problem with that argument is that, contrary to the Council's summation, ORS 469.553 does not refer solely to the "construction and operation of mills and milling wastes" at active sites; it also refers generally to the construction and operation of uranium mill tailings *disposal* facilities, without any expressed distinction about whether the disposal operations involve active or inactive mills. The unambiguous language of ORS 469.553 does not support the Council's distinction between the statute's applicability to disposal facilities for ongoing milling operations and disposal facilities aimed at remedying residual problems from inactive or abandoned operations. The Council's argument is further undermined by the fact that ORS 469.559, which was adopted in the same act as ORS 469.553, Or Laws 1979, ch 283, §§ 7 and 9, states that its provisions apply "notwithstanding" specifically enumerated statutes, but it states no exception to ORS 469.553.

The Council states in its brief:

> "Petitioner argues that ORS 469.553 requires a site certificate for the construction of a uranium mill tailings disposal facility; the [Lakeview] cleanup program involves the construction of a disposal facility; therefore, petitioner argues, the cleanup requires a site certificate. * * *

> "This reading of the statute has the virtue of simplicity

but the vice of ignoring the intent of the legislature. This court, however, must 'discern and declare the intent of the legislature' [citing *Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782 (1981)]."

However, the overriding points which the court made in *Whipple* are that "[t]he starting point in every case involving a determination of legislative intent is the language of the statute itself," 291 Or at 479, and that the statutory language also ends the inquiry when it is sufficiently clear to demonstrate the legislature's intent. *See* 291 Or at 481, 487. The plain meaning of the words used in ORS 469.553 and ORS 469.559 leads us to the same syllogistic simplicity that the Council ascribes to petitioner: Nothing in the language of those sections can be understood as meaning that disposal facilities constructed or operated under state-federal cooperative agreements concerning tailings from inactive sources are exempt from the site review procedures.

The Council's ruling and its argument on appeal suggest that, if ORS 469.553 does apply, it would be in conflict with ORS 469.559. The first basis for that suggestion is that, if the Council is both a contracting party under ORS 469.559 *and* the entity which decides whether the site proposed in its contract can be certified under ORS 469.553, it would act in "incompatible roles," and "[t]he legislature should not be assumed to have intended to achieve absurd results." We do not agree. It is not unique for the legislature to give more than one duty to the agencies which it creates. As petitioner points out, it is also not unique for an agency's duties to include being both a proponent and an adjudicator. *See, e.g., Gregg v. Racing Commission,* 38 Or App 19, 24-25, 588 P2d 1290, *rev den* 286 Or 637 (1979). There is some tension between the functions that the Council is to perform under ORS 469.553 and ORS 469.559, but they are nevertheless distinct functions with distinct purposes, and there is no fatal inconsistency between them. One is to review and pass on site applications for disposal facilities, and the other is to participate with federal authorities in carrying out disposal and other projects. The legislature could, and according to the statute did, conclude that the Council could discharge both functions simultaneously and satisfactorily. There is nothing absurd enough about that conclusion to warrant a judicial amendment of the statute.

The Council also concluded that the two statutes cannot apply simultaneously, because "ORS 469.559 requires the use of federal standards in the cleanup at Lakeview. ORS 469.553 would impose state standards." Petitioner assigns error to that conclusion. It states in its brief that, "[a]lthough the implication of [the conclusion] is not clear, it appears that [the Council] is contending that application of the ORS 469.553 siting process is somehow preempted by federal law." Petitioner then proceeds to argue at length that the federal act does not preempt ORS 469.553. However, the Council does not argue that the federal act is preemptive,[3] and we do not share petitioner's understanding that the language in the ruling imports that the Council viewed federal preemption as a reason for the inapplicability of ORS 469.553. We read the language as meaning that the *two state statutes* call for the application of different standards and that ORS 469.559 incorporates the federal standards, rather than that those standards are imposed on the state directly by the federal act. Assuming that that interpretation of ORS 469.559 is correct, we do not agree that it follows that ORS 469.553 is inapplicable. It *may* follow from the Council's interpretation,[4] as well as from the preemption issue which petitioner raises, that the Council's review of any site application which might be filed for the Lakeview project must address the federal standards and any effect they may have on some or all of the state statutory standards incorporated in ORS 469.553(2). However, that does not bear on whether the site review *process* mandated by ORS 469.553 is applicable. We hold that it is.

Reversed and remanded.

---

[3] The Council's response to this assignment of error says, in substance, that ORS 469.553 is inapplicable for the reasons stated in its other arguments.

[4] We do not imply agreement or disagreement with the Council's interpretation that ORS 469.559 incorporates or mandates the application of "federal standards" to the exclusion of any or all of the state statutory standards.