Argued February 2, affirmed March 12, 1973

# THE GROG HOUSE, INC., *Petitioner, v.* OREGON LIQUOR CONTROL COMMISSION, *Respondent.*

507 P2d 419

*William F. Thomas,* Portland, argued the cause and filed the brief for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

The petitioner, The Grog House, Inc., appeals from a decision of the respondent, Oregon Liquor Control Commission, denying its application for renewal of a liquor dispenser license. On May 10, 1972 the petitioner filed a timely application for the renewal of its license scheduled to expire on June 30,

1972. On August 17, 1972 the OLCC served the petitioner with notice of proposed refusal to renew dispenser license. The notice charged the petitioner-licensee with numerous violations of Oregon statutes and OLCC regulations, and informed the petitioner of its right to request a hearing before the OLCC as provided by ORS ch 183, ORS 472.189, and Oregon Administrative Rules, ch 845, § 10-490 (OAR 845-10-490). On August 23, 1972 the petitioner filed a motion with the OLCC requesting a hearing and a continuance thereof. With this motion the petitioner filed (1) a motion to make the notice of the proposed refusal to renew dispenser license more definite and certain in regard to the alleged violations and the dates and times thereof; and (2) a motion and affidavit for production and inspection of OLCC records pertaining to petitioner's case. On August 28, 1972, at the commencement of the requested hearing and after argument on them, the OLCC denied the latter two motions but provided:

"[The commission is going to put on its case now and complete it today] * * *. We will then adjourn * * *if you have a case in shape to put on * * * [until] 2:00 Wednesday afternoon [August 30, 1972] * * *."

This continuance gave petitioner a one and one-half day interval after hearing the commission's case to prepare its defense. Petitioner put on no case when the hearing reconvened, except to introduce two letters which Mr. Thomas, principal owner of petitioner, had written to commission. On September 26, 1972 the commission issued a final order denying petitioner's application for renewal of license. On appeal, the petitioner claims that the OLCC's refusal to grant the motion to make the notice more definite and certain

and the motion to produce and inspect records resulted in two separate denials of the petitioner's due process and fair hearing rights.

The petitioner's claim regarding the motion to make more definite and certain is grounded in the contention that the OLCC's original notice was inadequate for the preparation of a defense to the charges contained therein, because the notice failed to allege specific violations with dates and times thereof. Specifically, the petitioner contends that under ORS ch 183 and OAR 845-10-490 the OLCC is required to notify the licensee of each individual violation involved in the decision to refuse renewal of the license, and that, therefore, a statement of the time and date of each violation charged must be included in the notice.

■ In cases where the OLCC proposes to refuse an application for the renewal of a liquor license, the licensee is entitled to reasonable notice and a hearing. ORS 183.430(1); ORS 183.415(1); OAR 845-10-490. ORS 183.415(2) and OAR 845-10-490 specify the required contents of such reasonable notice:[①]

ORS 183.415(2). "The notice shall include:

"(a) A statement of the party's right to hearing, or a statement of the time and place of the hearing;

"(b) A statement of the authority and jurisdiction under which the hearing is to be held;

"(c) A reference to the particular sections of the statutes and rules involved; and

"(d) A short and plain statement of the matters asserted or charged."

---

[①] OAR 845-10-490, adopted by the OLCC in December 1971, is simply a restatement of the cited ORS provisions regarding notice and hearing in license revocation and renewal cases. Therefore, this opinion only refers to the applicable ORS provisions.

ORS 183.415(1) and (2) are derived from § 9(a) and (b) of the Revised Model State Administrative Procedure Act (1961), 9C ULA, Uniform Acts 142 (Supp 1967).⑳ With the exception of ORS 183.415 (2)(d), the provisions of ORS 183.415(2) are identical to the notice provisions contained in § 9(b) of the Revised Model Act. ORS 183.415(2)(d), which requires the notice to contain a "short and plain statement of the matters asserted or charged," is also derived from § 9(b). Section 9(b)(4) of the Revised Model Act provides:

> "The notice shall include:
>
> "* * * * *
>
> "(4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished."

1 Cooper, State Administrative Law 273, 283 (1965), with reference to this provision, says:

> "This provision imposes in effect a mandatory requirement for a bill of particulars if the initial notice fails to state the asserted facts in detail; and this requirement marks a significant step forward toward the goal of adequate pre-hearing notice. Until such time as pre-hearing discovery procedures become available in contested cases, the

---

⑳ See the Report of the Committee on Administrative Law contained in the 1967 Annual Committee Reports, Oregon State Bar. In its report, the Administrative Law Committee states that the original Oregon Administrative Procedures Act was derived from the Model Administrative Procedures Act, and that the committee's suggested revisions to the original Oregon Act (which were substantially adopted by the legislature in 1971) were patterned after the modifications in the Model Act occasioned by the Revised Model Act.

bill of particulars is the only device available to compel adequate specification of alleged facts before the hearing. The provision of the Revised Model Act recognizes that at the time of issuance of the first notice, the particulars of the case may not yet be known to the agency. But before the hearing is reached, the attorney handling the case for the agency must learn such particulars; and under the Revised Model Act, he is compelled to disclose them."

While ORS 183.415(2)(d) does not incorporate all of the notice procedure contained in § 9(b)(4) of the Revised Model Act, the Oregon provision does adopt the general requirement of § 9(b)(4): that the notice contain a short and plain statement of the matters asserted (ORS 183.415(2)(d)). The failure of the Oregon legislature to adopt § 9(b)(4)'s language does not eliminate requirements consistent with those required under § 9(b)(4) of the Revised Model Act.[9] In *Shively v. Stewart,* 65 Cal 2d 475, 55 Cal Rptr 217, 421 P2d 65, 28 ALR3d 1431 (1966), the court said:

"The Legislature's silence with respect to prehearing discovery in administrative proceedings does not mean, however, that it has rejected such discovery * * *.

"Statutory administrative procedures have been augmented with common law rules whenever it appeared necessary to promote fair hearings and

---

[9] ORS 183.340 directs the Attorney General to prepare model rules of practice for the benefit of state agencies subject to the Act. These model rules are intended to guide agencies in their adoption, pursuant to the requirements of the Act, of rules of practice setting forth the nature and requirements of all procedures utilized by the agency. The model rules regarding notice in cases where an agency intends to refuse the renewal of a license (Rule 21) incorporate a sample form of notice. The sample sets forth date, time and place specifics of the alleged violation. Therefore, it appears that the drafter of those rules considered detailed notice to be desirable, if not necessary.

effective judicial review. [Citing authorities.] These cases illustrate Professor Davis' observation that the law determining the adequacy of administrative hearings 'is mostly judge-made law . . .' and 'the standards are essentially the same whether judges are giving consent to due process, whether they are giving meaning to inexplicit statutory provisions, or whether they are developing a kind of common law.' (Davis, 1 Administrative Law Treatise (1958) § 7.20, p 506.)" 65 Cal2d at 479, 28 ALR3d at 1436-37.

■ Probably many, if not most, administrative hearings can be predicated on the brief statement which was contained in the notice in the case at bar. But due process requires a more detailed notice when the defendant requires it to prepare for his defense. We do not think it important how the defendant makes his application for the detail, or how it is provided. The substance of notice and an opportunity to prepare a defense are the requirements of due process in this context.

In the instant case, the OLCC's notice of proposed refusal to renew dispenser license alleged in general terms ultimate facts. The absence of specificity in the notice prevents it from meeting due process requirements.

■ Respondent OLCC contends that there was no prejudice resulting from the lack of more specific notice in this case because the petitioner had firsthand knowledge of every complaint and violation which formed the basis of the agency's determination. Such knowledge by itself does not establish lack of prejudice, since the petitioner was not notified of the specific violations and complaints which were being urged in support of the charges. Absent such information, the petitioner validly argues it could not eliminate

from consideration violations which may not have been a basis for the charges, and, therefore, could not focus its defense on the violations which would be in issue at the hearing.

■ However, petitioner was given time, albeit short, after hearing the specific charges to prepare a defense. The evidence against petitioner was overwhelming testimony concerning disorderly, illegal operations over a period of several months which grossly disturbed a neighborhood. It showed that Mr. Thomas had been repeatedly warned personally by police and OLCC agents of the shortcomings of the establishment. This was the kind of evidence, if there had been contra evidence, that would have been readily rebuttable. The cross-examination of the commission's witnesses was vigorous and its content substantiates the commission's contention that petitioner actually had advance detailed knowledge of the specific violations and charges which formed a basis for the action taken.[4] Mr. Thomas, an attorney, was conducting petitioner's defense. When, in the time allowed, he produced no real defense, and asked for no more time, we cannot say that the initial denial of due process was not remedied

---

[4] We think that circumstances in other cases may dictate that due process can only be provided by a detailed statement of the basis of the charges being set forth in the notice or a bill of particulars because the licensee may only be able to prepare a *bona fide* defense, including cross-examination of the commission's witnesses, by the advance knowledge thus provided. We also think that if detailed charges are not made known in advance of the hearing that evidence produced by the commission might be such that a continuance must be granted to give time for the licensee to prepare for recall of commission witnesses for cross-examination. Our review of the record in the case at bar convinces us that petitioner in fact had knowledge in advance of the charges used and was not misled in any particular, and consequently not prejudiced by lack of the detailed statement.

by the continuance given, and we hold that petitioner was not prejudiced.

■ The petitioner also contends that the failure of the OLCC to grant its motion for production and inspection of OLCC records resulted in a denial of due process and fair hearing. The petitioner's contention is without merit because the petitioner failed to avail itself of the proper statutory procedure for the production and inspection of records and documents in contested cases before an agency. ORS 183.440.[9] Given the failure of the petitioner to request a subpoena *duces tecum* pursuant to ORS 183.440, the OLCC properly denied the motion for production and inspection.

Affirmed.

---

[9] *ORS 183.440(1) provides:*

"The agency shall issue subpenas to any party to a contested case upon request on good cause being shown * * *."

Subpoenas *duces tecum* have been issued under this authority (*see* School Dist. No. 1 v. Nilsen, 7 Or App 396, 490 P2d 1265 (1971)) and in the opinion reversing (School Dist. No. 1, Mult. Co. v. Nilsen, 262 Or 559, 571-72, 499 P2d 1309 (1972)), the function of the subpoena thus used is discussed with apparent approval.