Argued January 27, affirmed February 17, 1976

GEORGE'S GOLD COIN, INC., *Petitioner,*
*v.*
OREGON LIQUOR CONTROL
COMMISSION, *Respondent.*
(CA 4992)

CHIN, *Petitioner,*
*v.*
OREGON LIQUOR CONTROL
COMMISSION, *Respondent.*
(CA 4991)

545 P2d 1395

*Richard V. Bayless,* Portland, argued the cause for petitioners. With him on the briefs were Bauer, Murphy, Bayless & Fundingsland, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and John W. Burgess, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LANGTRY, J.

## LANGTRY, J.

George Chin as a person "adversely affected or aggrieved" (ORS 183.480(1)(a)) and George's Gold Coin, Inc., petitioner, appeal from an order of the Oregon Liquor Control Commission which denied the application of George's Gold Coin, Inc., for a Dispenser Class "A" liquor license. George Chin is president and sole owner of George's Gold Coin, Inc. The corporation applied for a liquor dispenser license for the location in Portland known as Bill's Gold Coin, Inc., having made arrangements to purchase the operation and to lease the premises. Bill's Gold Coin, Inc., had had a dispenser license and had operated a restaurant there for some time. Robert Louie was a 50 percent stockholder in Bill's Gold Coin, Inc., and a director in George's Gold Coin, Inc. Both Louie and Chin, by reason of their positions in George's Gold Coin, Inc., were required to fill out and file Individual History Record forms in support of the application.

The application for license and the ensuing investigation showed that Chin's arrangement required a total payment of $135,000 with $40,000 to be paid down, and $1,983.60 per month, including interest, on the balance. He had arranged to personally borrow $60,000, unsecured, from a Ray Kizer, at 12-1/2 percent interest repayable monthly within five years with interest, in order to get the down payment and funds to purchase the inventory. He had no other assets of any substance except an equity of $15,000 to $20,000 in his residence. He also would be obligated to pay $2,600 per month rent on the property.

On October 31, 1974 the OLCC notified petitioner by letter that its application was not approved, giving the reasons:

"* * * * *

"The granting of a license in the locality set out in the application is not demanded by public interest or convenience. Also taken into consideration were the apparent false statements made by George Chin concerning

his arrest and conviction record, and the apparent false statements made by Robert K. Louie on the application. In Mr. Chin's case, the Commission expressed real concern regarding ORS 472.160 Paragraph (9).[1]

"Consideration on your application was based on ORS 472.160 and also on the criteria as set out in Oregon Administrative Rules Chapter 845, 10-700 to 10-730 which became effective 5-1-74.

"* * * * *."

Thereafter there was a hearing before an examiner, an examiner's findings and unfavorable recommendation, review by the OLCC, proposed findings and conclusions of the OLCC, exceptions to the same by petitioner, the final findings and conclusions, which remained unchanged after the exceptions, and the final order from which these appeals were taken. For purposes of this opinion, the last "Ultimate Findings of Fact" are all that are necessary to repeat:

"1. Applicant Corporation President George Chin made a false statement on his personal history form when he said he had not been arrested or convicted while being convicted of 'Conspiracy to Commit a Felony' ([OAR 845] 10-725 (5)).

"2. That Corporation President George Chin is underfinanced in that he is dependent on a $60,000 loan in order to begin this transaction. (* * * [OAR 845] (10-725 (1)).)

"3. That Corporation Director Robert Louie made five false statements on his personal history form when he answered 'no' to the questions: List the names of all relatives working in the liquor industry; Have you ever received a warning, violation notice, suspension or revocation for a liquor law violation as a licensee or permit-

---

[1] ORS 472.160(9), which deals with all kinds of liquor permits and licenses generally, provides:

"The commission may refuse any applicant if it has reasonable grounds to believe:

"* * * * *

"(9) That the applicant is not of good repute and moral character."

ORS 471.295, parts of which are quoted in text, infra, deals with liquor-by-the-drink applications specifically. In it are duplicated all of the considerations set forth in ORS 472.160.

tee; Have you ever held or do you hold any financial interest in any retail liquor business; Have you ever held an Oregon Liquor Control Commission license or service permit; and Have you ever been divorced. (* * * [OAR 845] (10-725(5)).)"

First, with reference to George Chin's false statement, it is not controverted that he had in 1971 been arrested for conspiracy to commit a felony and then convicted of an included misdemeanor, involving prostitution (on the premises to which the dispenser license would apply), and had been fined and placed on bench probation, and that he had nonetheless answered "No" to the question, "Were you ever arrested for any crime, or convicted, fined, imprisoned, placed on probation * * * for any offense in criminal, civil or military court? * * *" His explanation is that he had no intent to mislead, that everyone knew about the conviction, and that he answered as his attorney indicated he should. His attorney testified that he had advised the "No" answer because "* * * I read into that question the requirement that the crime be a felony * * *" because "the statute" stating a basis for denial of a dispenser license "is the commitment of a felony."

ORS 471.295(4)(b), (d), (i) and (j) provide:

"The commission may refuse to license any applicant if it has reasonable ground to believe any of the following to be true:

"* * * * *

"(4) That the applicant:

"* * * * *

"(b) Has made false statements to the commission.

"* * * * *

"(d) Has been convicted of violating any of the alcoholic liquor laws of this state, general or local, or has been convicted at any time of a felony.

"* * * * *

"(i) Is not possessed of or has not demonstrated financial responsibility sufficient to adequately meet the requirements of the business proposed to be licensed.

"(j) Is unable to read or write the English language or to understand the Liquor Control Act or regulations of the commission."

In some aspects of these cases, all of these paragraphs have some relevance. With reference to Mr. Chin's false statement, paragraph (b) is applicable and his attorney's explanation based on paragraph (d) is insufficient for reversal of the Commission on this appeal. We may not reverse or remand an order based on a finding of fact unless we find that it is not supported by substantial evidence. ORS 183.480(7)(d). The clear language of the question that was falsely answered left the Commission in a position where it was reasonable as a fact finder for it to doubt the witnesses' protestations of innocent intent.

■ Second, with reference to George's Gold Coin, Inc.'s appeal based on the same question and answer, and also on Mr. Louie's false answers to other questions, we are in the position again of not substituting what we might have found for what the Commission did find. Mr. Louie admitted some five misstatements of fact among his answers. Singly, they do not seem to amount to much. Taking the first four together, they may reflect an inability to understand the act or regulations (ORS 471.295(4)(j)) because he protested he did not understand the questions. On the fifth misstatement—that he had not been divorced—he had no explanation. When the five are taken together a reasonable person wonders how he could innocently make so many errors. Reasoned these ways, it becomes apparent these of the Commission's findings are based on substantial evidence. *See Von Weidlein/N.W. Bottling Co.,* 16 Or App 81, 100-02, 514 P2d 560, 515 P2d 936, 517 P2d 295 (1973).

■ Finally, it is contended there is no basis for refusal of the license on the basis of inadequate financing, ORS 471.295(4)(i), quoted above. As a threshold argument to this point, petitioner complains with considerable justification that the initial disapproval gave no notice that it should prepare to meet this point. The

letter of disapproval said nothing about inadequate financing. At least, this is so unless the notice that it was based on criteria set out in OAR 845-10-700 to 845-10-730 can be so construed. OAR 845-10-725, inter alia, provides that criteria for a licensee includes the financial responsibility and capability of the applicant. But there are many other subjects referred to in sections 10-700 to 10-730. The notice of financial shortcomings in the letter would be unreasonable and inadequate standing alone.

However, the examiner's findings and the Commission's proposed findings precisely related that a reason for the disapproval was inadequate financing. The petitioner's exceptions to these findings argued only that the financing shown by the record is adequate, and that the basis therefore is too vague in the absence of rules and regulations being promulgated concerning financing of dispenser outlets. There is no claim that petitioner could have shown better, or could have found better, financing. There was no request for a reopening of the case to present more evidence on this subject. *Compare The Grog House v. OLCC,* 12 Or App 426, 432-33, 507 P2d 419 (1973). In view of these shortcomings we must assume the petitioner made the best case it could in this regard at the hearing and during the preceding investigation.

■ A review of that evidence concerning financing which we have briefly related in the first part of this opinion shows that there is substantial reason inherent therein to doubt the adequacy of the financing of the venture.

■ We think the statutory criteria—that an applicant "[i]s not possessed of * * * financial responsibility sufficient * * *" for the project (ORS 471.295(4)(i)) is not vague, and it has not been demonstrated to us that there is any particular need for explanatory rules in that regard.

Affirmed.