Argued and submitted July 7, affirmed August 4, 1982

# HUGHES,
*Petitioner,*

*v.*

# ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(No. 2-1801-AH1520-8, CA A24468)

648 P2d 1324

Jan Perkins, Oregon Legal Services Corporation, Klamath Falls, argued the cause and filed the brief for petitioner.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Petitioner appeals from a final order of the Department of Human Resources, Adult and Family Services Division (Division) which upheld a decision by the Klamath Falls branch office to close petitioner's Aid to Families with Dependent Children grant (ADC).

The following facts, which are supported by substantial evidence in the record, are taken from the Division's final order:

*"FINDINGS OF FACT:*

"I

"Ms. Hughes, age 18, is receiving ADC for herself and two children. The assistance grant is based on the absence of Mr. Dan Hughes - husband, and father the the [sic] two children - from the home. Ms. Hughes lives at 1422 Wiard Street in Klamath Falls. She has lived there since December 1, 1981.

"II

"Mr. Dan Hughes lives with his brother (Pat Hughes) at 3060 Lodi Street in Klamath Falls. He has lived there since December 1, 1981. Mr. Hughes is not employed.

"III

"Ms. Cheryl Hughes and Mr. Dan Hughes lived together as a family unit in Bend until October, 1981. The family was living on Mr. Hughes Unemployment Compensation benefits. Mr. and Mrs. Hughes separated October 10, 1981. Ms. Hughes moved to Klamath Falls - stayed with her mother a week or two - and then moved into her own house. Mr. Hughes then moved to the Klamath Falls area in November 1981. Mr. Hughes' Unemployment Compensation benefits ceased in November 1981.

"IV

"In December 1981 and January 1982, Mr. Hughes visited Ms. Hughes' house daily. He spent from one to two hours at the house.

"From February 1, 1982 through the present (date of the hearing), Mr. Hughes visited the house at least once every other day.

"Mr. Hughes has some of his possessions stored at Ms. Hughes' house. These include various tools, eight-track tapes and old clothes.

"Mr. Hughes provides transportation for Mrs. Hughes and the children when needed. This is usually done when Mrs. Hughes' mother is unable to do so.

"Mr. Hughes took care of the two children for a 3-4 day stint at the end of January or the first part of February 1982. Both children were ill at that time.

"There were no legal separation, divorce action, or child support arrangements made at time of the hearing."

On January 31, 1982, the branch office attempted to close petitioner's grant because "there was no valid separation (for ADC purposes)." After a hearing, a final order was entered on April 14, 1982, affirming the decision of the branch office. In the order, the hearings officer concluded that:

"Evidence presented at the hearing confirms that Mr. Hughes is not living at his wife's house. The issue here rests solely on whether there is a valid separation for ADC purposes. It is the Hearing Officer's conclusion that there is no valid separation and that the branch office was correct in attempting to close the assistance grant. In December 1981 and January 1982, Mr. Hughes visited the house daily with the acknowledged purpose of visiting and playing with the children. Although the visits are less frequent now - he still can be counted on to visit every other day. He has personal items stored at the house and will provide transportation for Ms. Hughes and the children when needed. His presence at the home, at least once every other day, is quite predictable. It is the Hearing Officer's conclusion that Mr. Hughes is providing maintenance, physical care and guidance for the children."

Petitioner's first three assignments of error raise the question whether the Division's order is contrary to federal statutes that regulate the ADC program and to the Division's administrative rules governing eligibility. The thrust of petitioner's argument is that a child becomes eligible for ADC benefits whenever the child is deprived of either parental support or parental care, and because the father in this case is shown to have not provided financial support for the children, that deprivation entitles the children to ADC benefits. Petitioner contends that the withholding of such benefits contravenes the purpose and language of 42 USC § 606(a) and OAR 461-05-430(1).

■ In framing her argument in terms of deprivation of parental support or care, petitioner fails to acknowledge the crucial threshold question for determining ADC eligibility. By the terms of 42 USC § 606(a), regardless of the fact that a child is deprived of child support or care, the child may not receive ADC benefits unless the deprivation results from the continued absence from the home of one of the child's parents. Because the father in this case was shown not to be continuously absent from the home, the hearings officer was not required to reach the second question of the extent and character of the child's deprivation.

42 USC § 606(a) provides in pertinent part:

> "The term 'dependent child' means a needy child * * * who has been deprived of parental support or care *by reason of* the death, *continued absence from the home,* or physical or mental incapacity of a parent, * * *." (Emphasis supplied.)[1]

The terms of 42 USC § 606(a) must be given their ordinary meaning absent persuasive reasons to the contrary. *Burns v. Alcala,* 420 US 575, 580-81, 95 S Ct 1180, 43 L Ed 2d 469 (1975). The clear meaning of the foregoing statute as it applies to this case is that, although a child is indeed deprived of parental support or care, he or she is a "dependent child," and therefore eligible for ADC, only if that deprivation occurs "by reason of * * * the continued absence from the home * * * of a parent." That a parent's absence from the home is a necessary precondition to eligibility of a child for ADC has been recognized by the United States Supreme Court:

> "* * * The category singled out for welfare assistance by AFDC is the 'dependent child' who is defined in * * * 42 USC 606(a) * * *. Under this provision, and, insofar as relevant here, *aid can be granted only if 'a parent' of a needy child is continually absent from the home." King v. Smith,* 392 US 309, 313, 88 S Ct 2128, 20 L Ed 2d 1118 (1968). (Footnote omitted; emphasis supplied.)

---

[1] The state counterpart to 42 USC § 606(a) provides:

" 'Dependent child' means a needy child:

"(a) Who has been deprived of parental support or care by reason of death, continued absence from the home or physical or mental incapacity of a parent; * * *." ORS 418.035(1)(a).

The Division's administrative rule governing eligibility contains a precondition of absence from the home similar to that in 42 USC § 606(a):

"(1) Continued absence of one or both natural, or adoptive, or stepparent(s) from the home constitutes the basis for deprivation of parental support or care when:

"(a) *The parent is out of the home for 30 days* and the nature of this absence is such as either to interrupt or terminate the parent's functioning as a provider of maintenance, physical care, or guidance for the child; and

"(b) The known or indefinite duration of the absence precludes counting on the parent's performance of his/her function in planning for the support or care of the child.

"* * * * *

"(6) Evidence of Continued Absence:

"(a) Continued absence may be evidenced by the absence of a parent except as stated in section (4) of this rule from the home for a period of thirty (30) days or more unless future absences can be reliably predicted based on death, confinement to an institution, filing for divorce, divorce, legal separation, paternity having not been established, and such other circumstances as verified and documented by Adult and Family Services Division." (Emphasis supplied.) OAR 461-05-430(1) — (6)(a).

Before the Division is required by the rule to inquire into whether the nature of the absence is such as to interrupt or terminate the parent's functioning as a provider of maintenance, physical care or guidance for the child, there must be a finding that "the parent is out of the home for 30 days."

■ In the present case, the evidence establishes that the father was not continually absent from the children's home for 30 days. Therefore, the children did not qualify for ADC benefits. The Division's order, in denying benefits because there was "no valid separation," does not conflict with 42 USC § 606(a) or OAR 461-05-430.

■ Petitioner's fourth assignment of error is that the order is not supported by substantial evidence. She does not dispute that there is substantial evidence in the record to support the determination that the children's father was not continuously absent from their home. Instead,

petitioner contends that there is no evidence to support the last sentence of the Division's order which states:

"* * * It is the Hearing Officer's conclusion that Mr. Hughes is providing maintenance, physical care and guidance for the children."

We agree with petitioner; the evidence is uncontradicted that Mr. Hughes did not provide maintenance for the children. In the final order, in his summary of conclusions and reasons, the hearings officer states:

"* * * [Mrs. Hughes] testified she has the primary responsibility for care of the children and that her husband does not provide any physical care or guidance on a regular basis nor does he provide any financial support.

"* * * [Mr. Hughes] testified that his wife has the main primary responsibility for caring for the children and that he does not provide any financial assistance to the family.

"* * * * * ."

The hearing officer's conclusion that Mr. Hughes is providing maintenance is clearly erroneous. However, because the hearing officer made a determination that there was "no valid separation," *i.e.,* Mr. Hughes was not absent from the home, and that determination is substantiated by the record, the last sentence in the hearing officer's decision is irrelevant to the determination of eligibility. The error did not affect the result.

■     Petitioner's fifth assignment of error, that OAR 461-05-130 is not sufficiently specific to permit judicial review for substantial evidence, and her sixth assignment of error, that the decision denies petitioner equal protection, were issues petitioner failed to raise before the Division, and we will not entertain them for the first time on appeal. *Saxon v. Div. of State Lands,* 31 Or App 511, 514, 570 P2d 1197 (1977).

Affirmed.