Argued and submitted January 25, affirmed June 22, 1988

MARCOULES et al,
dba Tacoma Cafe,
*Petitioners,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

(86-ES-001, 86-V-036; CA A42127)

756 P2d 661

Edward J. Sullivan, Portland, argued the cause for petitioners. With him on the briefs were Mark J. Greenfield and Mitchell, Lang & Smith, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

WARDEN, P. J.

**WARDEN, P. J.**

Petitioners seek review of an amended final order of the Oregon Liquor Control Commission (OLCC) that suspended their retail malt beverage license for 120 days and upheld the emergency suspension of the license.[1] We affirm.

On June 6, 1986, the administrator of OLCC sent a letter to petitioners notifying them of the emergency suspension of their license. On June 16, petitioners requested a hearing on the emergency suspension. On June 23, OLCC issued a notice of proposed cancellation of petitioners' license. Petitioners also requested a hearing on the proposed license cancellation and asked that the two hearings be consolidated. After a consolidated hearing, the hearings examiner recommended that petitioners' license be suspended for 120 days but that the license not be canceled. In its amended final order, OLCC adopted those recommendations and upheld the emergency suspension. Petitioners seek review of that order.

Petitioners' second, third and fourth assignments concern the notice of the emergency suspension.[2] They allege that that notice was fatally deficient, because it did not comply with statutory requirements, and that their constitutional due process rights were violated by the deficient notice. In its order, OLCC concluded:

> "[Petitioners] may not have been given adequate notice for the emergency suspension contained in the letter delivered to them. The letter cited only the general emergency suspension provision of the [Administrative Procedures Act], ORS 183.430(2). It did not include the violation of [OLCC] rules which were the substantive basis for the suspension. Any defect in notice was cured, however, because the substance of the violations raised by the emergency suspension were identical to the violations outlined in the proposed cancellation letter.
>
> "[Petitioners] were aware of the allegations prior to the hearing and were prepared to meet those allegations. [Petitioners] were not surprised by the evidence put on by [OLCC] relevant to those issues and[,] when unaware of any particular evidence submitted by [OLCC], were given an

---

[1] OLCC also concluded that petitioners' license should not be cancelled.

[2] Petitioners' first, sixth, tenth and twelfth assignments of error have no merit and require no discussion.

opportunity to meet that evidence. [Because this was an expedited process to benefit petitioners, their] counsel cannot claim [that] there was no opportunity to meet the claims raised by [OLCC]. Counsel, in fact, provided expert representation." (Footnote omitted.)

The notice stated that petitioners' license was suspended "pursuant to ORS 183.430(2)," which provides, in pertinent part:

"In any case where the agency finds a serious danger to the public health or safety and sets forth specific reasons for such findings, the agency may suspend or refuse to renew a license without hearing, but if the licensee demands a hearing within 90 days after the date of notice to the licensee of such suspension or refusal to renew, then a hearing must be granted to the licensee as soon as practicable after such demand * * *."

That statute provides a basis for OLCC to suspend a license when there is an immediate need to protect the public health and safety, with a subsequent hearing only on request. The reasons for a prehearing suspension under ORS 183.430(2) must be at least as substantial as those which would justify suspension under the general suspension statute. ORS 471.315.[3] *See Reynolds v. Children's Services Div.,* 29 Or App

---

[3] ORS 471.315 provides:

"[OLCC] may cancel or suspend any license, or impose a monetary penalty in lieu of or in addition to suspension as provided by ORS 471.322, if it finds or has reasonable ground to believe any of the following to be true:

"(1) That the licensee:

"(a) Has violated any provision of this chapter or any rule of [OLCC] adopted pursuant thereto.

"(b) Has made any false representation or statement to [OLCC] in order to induce or prevent action by [OLCC].

"(c) Is not maintaining an acceptable bond.

"(d) Maintains a noisy, lewd, disorderly or insanitary establishment, or has been supplying impure or otherwise deleterious beverages or food.

"(e) Is insolvent or incompetent or physically uanable to carry on the management of the establishment of the licensee.

"(f) Is in the habit of using alcoholic liquor, habit-forming drugs or controlled substances to excess.

"(g) Knowingly has sold alcoholic liquor to persons under 21 years of age or to persons visibly intoxicated at the time of sale.

"(h) Has misrepresented to a customer or the public any alcoholic liquor sold by the licensee.

"(i) Since the granting of the license, has been convicted of a felony, of

381, 385, 563 P2d 767, *aff'd in part, rev'd in part on other grounds* 280 Or 431, 571 P2d 505 (1977).

The emergency suspension notice included OLCC's findings that continued operation of petitioners' tavern "create[d] a serious danger to the public's health and safety" and that petitioners had "maintained a disorderly premises between * * * January 1, 1985 to [the date of the notice]." The notice then cited various types of "ongoing disorderly conduct" at the tavern, arguably "set[ting] forth the specific reasons for [the] findings * * *." ORS 183.430(2). However, the notice did not comply with one of OLCC's own rules regarding the notice requirements for emergency suspension, OAR 845-03-025(2)(c), because it failed to refer "to the particular sections of the statutes and rules involved," which are ORS 471.315 and the sections of OAR 845-06-045 then applicable. The notice of emergency suspension was therefore deficient.

We next must examine whether petitioners were prejudiced by the deficient notice. *See Taylor's Coffee Shop v. OLCC,* 28 Or App 701, 707, 560 P2d 693, *rev den* 278 Or 157 (1977). The notice proposing cancellation of petitioners' license referred to the particular statutes and rules under which OLCC was proceeding, along with specific dates that the alleged violations occurred.[4] Petitioners' request to consol-

---

violating any of the liquor laws of this state, general or local, or of any misdemeanor or violation of any municipal ordinance committed on the licensed premises.

"(2) That any person licensed to sell at retail for consumption on the premises is acting as an agent of, or is a manufacturer or wholesaler of alcoholic liquors, or has borrowed money or property, or has accepted gratuities or rebates, or has obtained the use of equipment from any manufacturer or wholesaler of alcoholic liquor or any agent thereof.

"(3) That there is any other reason which, in the opinion of [OLCC], based on public convenience or necessity, warrants canceling or suspending such license."

[4] That notice cited violations of ORS 471.315(1)(d), *see* n 3, *supra,* and certain sections of OAR 845-06-045 then applicable. At that time, OAR 845-06-045 provided, in relevant part:

"(2) No licensee shall permit, tolerate, participate in or encourage any loud, noisy, or boisterous conduct, any lewd conduct, any conduct or language which is intended to threaten another with physical harm, or any fighting or offensive physical contact, such as one patron pushing another, in or upon the licensed premises or areas just outside the licensed premises which are controlled by the licensee.

"* * * * *

"(4) No licensee shall permit gambling activity * * *, or any other criminal conduct, to occur on the licensed premises."

idate the suspension hearing with the cancellation hearing was granted, and the hearing was also expedited at petitioners' request. At the hearing, OLCC relied on the same grounds to justify the emergency suspension and the proposed cancellation. Petitioners do not contend that they were misled or uninformed about the basis for the emergency suspension or unable to contest any of the issues raised at the hearing. They did not request a continuance to enable them to meet evidence against them, and their counsel vigorously cross-examined witnesses. They also had the opportunity to, and did, present evidence supporting their position. We conclude that petitioners were not prejudiced by the deficient notice and that their due process rights were not violated. *See Taylor's Coffee Shop v. OLCC, supra; The Grog House v. OLCC,* 12 Or App 426, 433-34, 507 P2d 419 (1973).

In their fifth and eleventh assignments, petitioners contend that, without a rule defining the terms, OLCC could not apply the statutory term "disorderly premises," ORS 471.315(1)(d), and certain other terms in OAR 845-06-045. Before OLCC, petitioners argued that those terms were unconstitutionally vague, *not* that they could be applied only after being defined by agency rules. Because the issue of rulemaking was not raised below, we will not consider it for the first time on appeal. *Hughes v. Adult & Family Services,* 58 Or App 478, 484, 648 P2d 1324 (1982).

Petitioners' seventh, eighth and ninth assignments concern OLCC's findings of fact and conclusions of law. The findings of fact are supported by substantial evidence when the record is viewed as a whole, ORS 183.482(8)(c), and petitioners do not contend otherwise. They do assert, however, that OLCC's amended order fails to demonstrate that its findings lead to a reasoned conclusion that they permitted and tolerated disorderly and criminal conduct in their tavern. When the rational nexus between a fact and an inference is obvious, OLCC need not expressly set forth its reasoning. *See Baillie v. State Board of Higher Educ.,* 79 Or App 705, 711, 719 P2d 1330, *rev den* 302 Or 461 (1986). We are satisfied that OLCC's conclusions of law reasonably follow from its findings of fact.

Affirmed.