Argued and submitted April 1, 1991, reversed and remanded for reconsideration
January 8, 1992

Elidio MARTINI,
dba Pink Pearl East,
*Petitioner,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

(89-L-004; CA A63926)

823 P2d 1015

Craig B. Cordon, Portland, argued the cause and filed the brief for petitioner.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Petitioner seeks review of an order of the Oregon Liquor Control Commission (OLCC) denying his application to renew the liquor license for his business, "Pink Pearl East," in Portland. OLCC concluded that the application should be denied under OAR 845-05-025(10), which provides, in part:

> "The following criteria will be given sufficient consideration so that a license will not be issued *unless good cause which outweighs the criteria* involved is shown by the applicant:
>
> "* * * * *
>
> "(10) The licensing of the premises would not be in the *best interests of the community* because of illegal activities or a recent history of altercations, noisy conduct or other disturbances in or around the premises under the applicant's or other's ownership or control." (Emphasis supplied.)[1]

In May, 1988, before opening Pink Pearl East, petitioner met with OLCC personnel and representatives of the neighborhood where the business is located. In November, 1988, they agreed on a compliance plan to accommodate community concerns. It is undisputed that petitioner has made good faith efforts to abide by the plan and to prevent disturbances associated with his business. However, those efforts have not been entirely successful.

On April 10, 1989, the Regulatory Process Division of OLCC notified petitioner that it intended to recommend the denial of his renewal application, based on OAR 845-05-025(10) and ORS 471.295.[2] On June 21, 1989, a hearings officer held a contested case hearing and found that petitioner had fulfilled the requirements of the compliance

---

[1] The enabling legislation for the rule is ORS 471.295, which provides, in part:

"The commission may refuse to license any applicant if it has reasonable ground to believe any of the following to be true:

"(1) * * * [T]he granting of a license in the locality set out in the application is not demanded by public interest or convenience."

ORS 471.295(5) was enacted after the events in question.

[2] OLCC's eventual denial of petitioner's application was based solely on OAR 845-05-025(10).

plan, that there was no indication of significant drug activities, prostitution or other violent activities in the vicinity and that petitioner had fully cooperated with OLCC and the public in attempting to control disturbing activities of his patrons on the premises. However, there was also evidence that patrons disturbed neighborhood residents while going to and from the establishment, with incidents occurring as often as two or three times a week.

At the hearing, a representative of the Regulatory Process Division recommended new interpretations of what is in the "best interests of the community" and for determining whether there is "good cause which outweighs" a basis for denial of an application under OAR 845-05-025(10). The division urged that the rule should be interpreted and applied

> "so that the persistent, disturbing noisy conduct of patrons away from the licensed premises would not only be considered serious but would also constitute such a serious threat to the community that persistent, disturbing, noisy conduct alone would constitute a denial basis under OAR 845-05-025(10)."

Those recommendations differed from OLCC's existing interpretation of the rule, under which an applicant could show good cause by demonstrating substantial efforts to control the licensed premises and patrons' activities in the area.[3] The division proposed that OLCC no longer take into account good faith efforts by the licensee and that it should

> "do away with the reasonable efforts emphasis in the current standard, so that [OLCC] would not renew a license if problems associated with the licensed premises were serious, numerous and persistent, even if the licensee showed no failings."

The hearings officer adhered to OLCC's existing standards for applying the best interests of the community and good cause provisions of OAR 845-05-025(10). She issued a proposed order, recommending renewal of petitioner's license.

On review of the proposed order, OLCC accepted the division's recommended changes in its interpretation of the

---

[3] Although the parties do not explain the precise source of that interpretation, they agree that it existed, what its substance was and that petitioner's application could have been granted under it.

rule and denied the license. It explained

> "that persistent, disturbing, noisy conduct of patrons in the immediate vicinity of the licensed premises may be sufficiently serious to warrant license refusal under OAR 845-05-025(10). In order to overcome serious and persistent noise problems, the applicant must demonstrate not only the willingness, but also the ability to adequately control patrons' behavior in the immediate vicinity of the premises.

> "In this case, [OLCC] concludes that there is inadequate control when neighbors from six households are awakened or disturbed as often as two or three times per week by the noisy conduct of the Pink Pearl patrons.

> "* * * * *

> "[OLCC] does not require that licensees eliminate all problems which patrons cause outside the premises. Licensees who make serious, reasonable, and consistent efforts to eliminate problems should not lose their license[s] if the remaining problems are not serious and persistent. We will look at the number of neighbors affected, the frequency of the disturbances, and the extent to which the neighbors are disturbed. Although [OLCC] declines to adopt a quantifiable standard at this time, [it] concludes that there is inadequate control when neighbors from six households are awakened or disturbed as often as two or three times per week by the noisy conduct of Pink Pearl patrons."

In his first assignment of error, petitioner contends that "OLCC changed its interpretation of OAR 845-05-025(10) during the course of the hearing, [and] petitioner did not have appropriate notice of the change in agency standards." The primary focus of petitioner's argument is that agencies must apply standards consistently and give parties fair notice of what the standards are and an opportunity to present their cases under the standards that are applied. OLCC does not share that focus in its argument to us, but concentrates instead on its authority to make and revise policy. It relies, *inter alia*, on *Trebesch v. Employment Division*, 300 Or 264, 710 P2d 136 (1985), and *Sun Veneer v. Employment Div.*, 105 Or App 198, 804 P2d 1174 (1991), for the proposition that agencies may define and apply delegative statutory or regulatory terms in the context of deciding contested cases. It follows, in OLCC's view, that an agency

may change existing policy in that context and that that is precisely what it did here.

Petitioner relies on *McCann v. OLCC*, 27 Or App 487, 492, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977), where we said:

> "We have held that the Administrative Procedures Act, ORS ch 183, requires that administrative agencies operating under broad grants of power establish standards for official action for the purpose, among others, of consistency of application. One reason for that requirement, we observed in *Sun Ray Dairy v. OLCC*, 16 Or App 63, 71, 517 P2d 289 (1973) (*Sun Ray I*), is that an applicant is 'entitled to even treatment by rule of law and reasonable confidence that he has received such treatment.' *See also Graham v. OLCC*, 25 Or App 759, 763, 551 P2d 112, *rev den* (1976) (*Graham II*) (dissent of Thornton, J.).
>
> "Absolute consistency cannot be expected of an agency with as broad a delegation and complex a task as the OLCC, but procedures should work toward that end. Thus we recognized in *Sun Ray Drive-In Dairy v. OLCC*, 20 Or App 91, 95, 530 P2d 887 (1975) (*Sun Ray II*), that where standards cannot by their nature be precisely defined in advance of their application, the 'Commission must have certain latitude in applying these criteria to conflicting interests.' So many variables exist, that we have declined to require mathematical precision, so long as the agency provides notice to applicants and others of the criteria upon which what are often judgment calls are to be made * * *."

■■ Both parties are partly right. We agree with OLCC's contention that it may make policy refinements in deciding contested cases and that those may include changes in its interpretations of statutes and rules. *See* n 4, *infra*. It is essential to the workings of the process that adaptations can be made to meet the facts of particular contested cases. However, we agree with petitioner that, at least when an agency changes the established interpretation of a rule during the course of a contested case proceeding to the substantial extent that OLCC did here, the parties must be given the opportunity to present evidence and arguments that are responsive to the new standard.

There is no inconsistency between the two views: The agency has the authority to announce new criteria in the

contested case setting, but contested case procedural requirements mandate that the parties be allowed to present their cases in the light of the new criteria. *See* ORS 183.415(3); *The Grog House v. OLCC*, 12 Or App 426, 432, 507 P2d 419 (1973). In *Forelaws on Board v. Energy Fac. Siting Council*, 306 Or 205, 216, 760 P2d 212 (1988), the court concluded that the agency had authority to interpret a statute by an order in a case, as well as by a rule; however, the court added the caveat, "[s]o long as the parties had an opportunity to present evidence that addressed [the statute] as interpreted" by the agency. Petitioner had no such opportunity here. The new interpretation was not adopted until OLCC issued its final order, long after the hearing before the hearings officer was over.[4]

■ We do not decide that that opportunity must be afforded every time an agency makes *any* new interpretation or change in an existing interpretation of a statute or rule in a contested case. However, when there is an established interpretation that the agency alters to a significant degree in the course of a proceeding, the parties are entitled to be heard under the new standards. This case presents no occasion for locating the line between the two situations, because the changed interpretations here are well over any line that could be drawn.[5]

■ OLCC argues that petitioner was given the necessary opportunity, because he could have "respond[ed] to the regulatory staff's recommendation that [OLCC] adopt a new

---

[4] If an interpretation is announced during the course of a hearing, it may sometimes be possible for the parties to have an adequate opportunity to address and present evidence under it while the hearing is still in progress. However, that will not invariably be the case. The stage of the hearing at which the interpretation is made, along with other factors, could affect the ability of the parties to prepare and make their presentations. It is unnecessary for us to consider the appropriate rule for situations of that kind here. As noted in the text, here, the hearing process had been completed before adoption of the new interpretation was made known.

[5] ORS 183.482(8)(b)(B) requires us to remand an agency order that is

"[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency."

Neither party relies on that statute, and it is not the basis for our decision. The agency's new criteria may have been adequately explained in the order itself, but the explanation came too late to provide petitioner with an adequate contested case proceeding.

interpretation of what constitutes good cause." That argument begs the question. The problem is not that petitioner was denied an opportunity to argue for the retention of the existing standards; it was that he was unable to prepare and present a case under the new standards that were eventually applied by OLCC. We hold that petitioner was denied required contested case procedures and that he is entitled to a new hearing.

Petitioner's second assignment of error lacks merit, and we reject it without discussion.

Reversed and remanded for reconsideration.