Argued and submitted May 9, reversed and remanded with instructions May 29,
petition for review denied July 30, 1996 (324 Or 18)

Peter and Judy GUTOSKI,
*Petitioners,*

*v.*

LANE COUNTY
and Vernon L. Egge,
*Respondents.*

(95-192; CA A92492)

917 P2d 1048

Laurence E. Thorp argued the cause for respondent Vernon L. Egge. With him on the brief was Thorp, Purdy, Jewett, Urness & Wilkinson, P.C.

No appearance for respondent Lane County.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

### DEITS, P. J.

Petitioners seek review of LUBA's affirmance of Lane County's decision to reduce the required minimum lot size in a residential zone and, thereby, to enable respondent Egge to add a second residence on his property. We reverse.

Respondent's property is adjacent to petitioners'. Petitioners' property is zoned and used for agriculture. Respondent's property was at one time similarly zoned, but was rezoned to its original residential designation after an exception was taken to Goal 3, the *statewide* agricultural goal. In the present proceeding to rezone the property again, petitioners contended that, in evaluating conflicts between the proposed intensified use of respondent's property and petitioners' farming activities, the county was required to apply Goal 3, Policy 8 (policy 8) of the applicable part of the *county's* comprehensive plan. That policy requires that the county:

> "Provide maximum protection to agricultural activities by minimizing activities, particularly residential, which conflict with such use. Whenever possible planning goals, policies and regulations should be interpreted in favor of agricultural activities."

The hearings officer concluded that the policy was not applicable, *inter alia,* because "policy 8 applies to agricultural lands," and *respondent's* property is in an existing exception area. Noting that *petitioners'* property is agricultural, the hearings officer stated that "when changes in residential [zoning] are proposed" in exception areas, the "method of dealing with conflicts with nearby agricultural lands is mitigation, not an absolute preference for agricultural activities."

Petitioners sought review of the zone change by the county governing body, under a local provision that gives it discretion to hear or not hear an appeal from a lower decisionmaker's ruling. Although the governing body made explanatory statements that respondent regards as endorsing the hearings officer's interpretation of policy 8, it declined to review the decision. Petitioners appealed to LUBA, which affirmed the hearings officer's decision and, apparently, his

reasoning. Petitioners seek review and assign error to the hearings officer's and LUBA's conclusions concerning policy 8.

The threshold question is whether we are required to defer to the county's interpretation, pursuant to *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and ORS 197.829(1). In *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994), the court created the rule that LUBA and the courts are to defer under *Clark* only to local governing body interpretations of local land use legislation, and not to those of hearings officers or other subordinate local officials. Here, the governing body denied discretionary review, and the final county decision, which is the subject of this appeal, was the hearings officer's.

■　Because the governing body's denial was accompanied by incidental language that respondent understands to imply agreement with the substance of the hearings officer's decision, respondent attempts to analogize the situation here to *Derry v. Douglas County*, 132 Or App 386, 888 P2d 588 (1995). We held in that case that, when a governing body affirms a lower body's decision and either expressly agrees with or is silent concerning the latter's interpretation of local legislation, the interpretation is imputable to the governing body and is to receive deference on review. Here, however, the governing body expressly declined to consider the case. We conclude that *Derry* is inapposite, and that the local interpretation here is not subject to deferential review under *Clark* or *Gage*.

■　Accordingly, we will consider the parties' arguments concerning the meaning of the local legislation *ab initio*. *Gage v. City of Portland*, 133 Or App 346, 891 P2d 1331 (1995). We disagree with the hearings officer's reading of policy 8. His conclusion that that policy does not apply to land in exception areas, like respondent's, begs the question. The objective of policy 8 is to protect agricultural activities against conflicts from other activities, particularly residential. Petitioners are engaged in agricultural activities, and their property *is* in an agricultural zone. We do not interpret policy 8's protections of agricultural activities conducted in an agricultural zone to be

defeated if the conflicts emanate from land that is zoned differently—especially when, as here, the nonagricultural zoning became permissible only because of a Goal 3 exception based on characteristics that are peculiar to the area that includes respondent's property and that are not present on petitioners' property.

By its terms, policy 8 speaks to the protection of agricultural activities against conflicting uses. It does not state or imply that the zone where the conflicting uses are conducted is germane to whether the agricultural activities with which they conflict are to be protected. Indeed, it would controvert the fundamental purpose of policy 8 to make the availability of the policy's protections depend on whether the conflicts come from one neighboring property instead of another, if the farm is located near a boundary of the agricultural zone. We do not agree with the hearings officer's and LUBA's conclusion that policy 8 is inapplicable.

Respondent bolsters its contrary argument by asserting:

"It is certainly a reasonable interpretation by the County that [Goal 3, policy 8] was intended only to apply to agricultural lands since Goal 2, Policy 11 [(policy 11)] expressly controls rural residential densities in developed and committed exception areas and requires consideration of the effect on resource lands. It requires that densities 'shall be applied to represent existing development patterns and to limit problems resulting from a negative evaluation of any of the above criteria' (which includes 'effect on resource lands'). The Hearings Official reasonably concluded that allowing two residences with the conditions he imposed (i.e., a farm management easement, solid fencing and setback requirements) was better than to permit only one residence on the same property without the safeguards he imposed. The Board of Commissioners and LUBA concluded that his interpretation was reasonable."

■ That argument does not assist respondent. Even assuming that the hearings officer's order can be read in the way respondent reads it, as it bears on policy 11,[1] we would

---

[1] The order states:

"Based on their assertion of a negative impact, [petitioners] claim that Goal 2, policy 11 of the Lane County Rural Comprehensive Plan requires that

not be satisfied that the order gives sufficient attention to the relationship between the two policies. Policy 11 itself states that "[l]and use designations and densities appropriate for developed and committed areas shall be determined *through compliance with other plan policies* and the following criteria[.]" (Emphasis supplied.) Policy 8, in turn, mandates that, where possible, "planning goals, *policies* and regulations should be interpreted in favor of agricultural activities." (Emphasis supplied.) Both policies make it clear that they are to be read with reference to each other, as does the definition of "comprehensive plan" in ORS 197.015(5). Further, policy 8 leaves no doubt that the objective it promotes is one that is generally to be given preference. We conclude that, even if policy 11 has some bearing on the issues here, it does not apply to the exclusion of policy 8. The hearings officer erred by failing to apply policy 8, and LUBA erred by affirming his decision.

Petitioners also assign error to LUBA's rejection of their argument that the hearings officer did not adequately address one of the issues they raised. Because our decision necessitates a remand to the county, we do not reach that assignment.

Reversed and remanded with instructions to remand decision to county for further proceedings not inconsistent with this opinion.

---

the proposed zone change be denied. This is an incorrect reading of the Comprehensive Plan requirements. Goal 2, policy 11 does not prohibit increased density in the event of a conflict. The policy states: '[d]ensities of 1, 2, 5, or 10 acres shall be applied to represent existing development patterns and to limit problems resulting from a negative evaluation of any of the above criteria.' The Board's Order 88-2-10-14, interpreting the policy makes it clear that the process should include an analysis of how the conflict can be accommodated: 'It should be noted that, even though a compatibility problem might be identified during step one of the compatibility analysis, compliance with this policy can still be established if mitigation measures or conditions can be established to reasonably limit any of the identified compatibility problems.' "

Respondent refers to governing body actions in other cases that accord with the hearings officer's conclusion here. None of those is in the record, and none is before us.