Argued and submitted June 24, affirmed August 5, 1998

Peter GUTOSKI
and Judy Gutoski,
*Petitioners,*

*v.*

LANE COUNTY
and Don Stapleton,
*Respondents.*

(97-194; CA A101684)

963 P2d 145

Stephen L. Vorhes argued the cause for respondent Lane County. With him on the brief was Lane County Office of Legal Counsel.

Laurence E. Thorp argued the cause for respondent Don Stapleton. With him on the brief was Thorp, Purdy, Jewett, Urness & Wilkinson, P.C.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Lane County granted respondent Stapleton's application to rezone his property from a lower to a higher density rural residential designation to enable him to add a second residence on the parcel. Petitioners operate an orchard on their adjacent land in an agricultural zone. They appealed the county's decision to LUBA and, in turn, to us. In *Gutoski v. Lane County,* 141 Or App 265, 917 P2d 1048, *rev den* 324 Or 18 (1996), we held that the county had erred by not applying Goal 3, policy 8, of its comprehensive plan (policy 8) to the application, and we directed that the decision be remanded to the county. Policy 8 requires that the county

"[p]rovide maximum protection to agricultural activities by minimizing activities, particularly residential, that conflict with such use. Whenever possible, planning goals, policies and regulations should be interpreted in favor of agricultural activities."

On remand, a county hearings official conducted an evidentiary hearing and subsequently entered an order that again granted the application. As explained by LUBA, the hearings official's order "interpreted Policy 8 to permit a conflicting residential use as long as it did not force a significant change in or significantly increase the cost of accepted farming practices on petitioners' farm." Petitioners appealed to the county's governing body, which "affirmed and adopted" the hearings official's interpretation "as its own." Petitioners then appealed to LUBA, which affirmed, and they now again seek our review. We also affirm.

Petitioners make four assignments of error. One, their fourth, requires no discussion. In their first assignment, they argue that the county's interpretation of policy 8 was contrary to our interpretation of it in the prior review and is, therefore, precluded under the "law of the case" doctrine. We disagree. Our discussion and holding in *Gutoski* went only to the question of whether the policy is *applicable.* We did not foreclose the county from interpreting the provision on remand with respect to *how* it applies generally or to the

present application. We find nothing in the county's interpretation that is inconsistent with our earlier opinion. Petitioners also assert, in their second assignment, that the county's interpretation is contrary to the express language of policy 8 and related plan provisions and is therefore subject to reversal under ORS 197.829(1)(a). We again disagree. The interpretation is not "clearly wrong."[1] *See, e.g., Goose Hollow Foothills League v. City of Portland,* 117 Or App 211, 843 P2d 992 (1992).

The assignment that calls for more extensive discussion is petitioners' third. They contend in it that LUBA was incorrect in holding that the hearings official did not err by refusing to reopen the evidentiary hearing after he announced his interpretation of policy 8 to enable petitioners to present "evidence and argument relevant to the standard as interpreted." Petitioners' essential premise is that they could not have known before the hearings official's interpretation what the county would treat policy 8 as meaning and therefore could not have presented evidence responsive to the interpreted standard at the hearing that preceded the issuance of the hearings official's interpretation.

LUBA rejected that argument. It explained:

"According to petitioners, the focus of evidence and argument [before the interpretation was issued] was the external impacts of farming operations on the subject property rather than any changes or increased costs to those farming operations from the proposed use.

"We acknowledged in *Heceta Water District v. Lane County,* 24 Or LUBA 402 (1993), that the local government may be required to reopen the evidentiary hearing where the local government (1) changes to a significant degree an established interpretation of an approved standard, (2) the change makes relevant a different type of evidence that was irrelevant under the old interpretation, and (3) the party seeking to submit evidence responsive to the new interpretation identifies what evidence not already in the record it seeks to submit. *See* 24 Or LUBA at 418-19.

---

[1] The "deferential review" standard of ORS 197.829(1) was not applicable in our previous review, because the governing body had not acted on the application. On remand, it did, and the standard does apply this time. *See Derry v. Douglas County,* 132 Or App 386, 888 P2d 588 (1995).

"In the present case, petitioners do not argue that the county has changed an established interpretation, nor do they identify what responsive evidence not already in the record they seek to submit. As the county and intervenor point out, the meaning of Policy 8 was an intensely debated issue in both proceedings below. Where the interpretation of a local provision is a matter of first impression for the local government, the participants should have realized that a variety of interpretations might be adopted, and should have presented their evidence accordingly. *Wicks v. City of Reedsport*, 29 Or LUBA 8, 19 (1995). In fact, it appears that petitioners did submit evidence relevant to the impacts of residential development on their farming operations, in the form of the prior lawsuit and testimony about the changes and costs resulting therefrom. Petitioners do not identify what other type of evidence they would submit in another evidentiary hearing. For these reasons, we conclude that the county did not commit a procedural error in refusing to reopen the evidentiary record."

Generally, as in the trial court and the agency setting, interrelated questions of fact and law are "tried" and decided simultaneously in the local land use hearing process. From the standpoint of both litigants and decisionmakers, questions of fact and of law can have reciprocal effects on the answers to one another, and the ability to deal with the two as part of the same exercise is an essential tool of the advocate's craft. Hence, what petitioners appear to perceive as a chicken-and-egg problem that is somehow unique to this case is, in our view, simply a variation of a standard practice in which lawyers and judges have been engaging for centuries.

We nevertheless agree with LUBA that, in certain limited situations, the parties to a local land use proceeding should be afforded an opportunity to present additional evidence and/or argument responsive to the decisionmaker's interpretations of local legislation and that the local body's failure to provide such an opportunity when it is called for can be reversible error. *See Martini v. OLCC*, 110 Or App 508, 823 P2d 1015 (1992). We also agree with LUBA, however, that *at least* two conditions must exist before it or we may consider reversing a land use decision on that basis. First, the interpretation that is made after the conclusion of the initial evidentiary hearing must either significantly

change an existing interpretation or, for other reasons, be beyond the range of interpretations that the parties could reasonably have anticipated at the time of their evidentiary presentations.[2] Second, the party seeking reversal must demonstrate to LUBA that it can produce specific evidence at the new hearing that differs in substance from the evidence it previously produced and that is directly responsive to the unanticipated interpretation.

██ Petitioners do not clear either hurdle. As to the first, policy 8 requires the minimization of residential and other activities that conflict with agricultural uses. By its own terms, and read in context with other county plan provisions, it does not purport to have an absolute preclusive effect. Hence, some form of "significant effect" standard, of the kind embodied in the county's interpretation, was well within the boundaries of reasonable anticipation. The fact that petitioners *disagree* with the interpretation—as they make insistently clear—does not mean that they should not have *reasonably foreseen* that it or something like it was among the interpretive possibilities that could have been taken into account in preparing for the evidentiary hearing.

Turning to the second consideration, it is not disputed that petitioners did not direct LUBA's attention to any evidence, specifically or by kind, that they would have offered at a renewed hearing and did not present at the first. Similarly, petitioners now make no such showing to us. Petitioners contend, however, that they "should not have to demonstrate in advance * * * how they would exercise their right to submit evidence in order to be entitled to that right." We disagree with petitioners' premise. In our view, they have *already* been afforded and exercised their *right*, and what they seek now is instead the extraordinary remedy of being

---

[2] We emphasize that this case does not require us to establish a definitive across-the-board test of the kind developed by LUBA in *Heceta Water District v. Lane County*, 24 Or LUBA 402 (1993). Given the facts here, we need only—and do—apply the most minimal standards imaginable to petitioners' argument. By doing so, we imply nothing about the standards that we will apply in cases that present closer variations of the question than this one does, and we also do not now imply agreement or disagreement with the test developed by LUBA in *Heceta Water District*.

allowed to repeat the exercise. In the absence of any demonstration that petitioners have a meaningful and nonredundant showing to make, LUBA properly did not, and we cannot, conclude that the county erred by not acceding to their request for a second hearing.[3]

Petitioners rely on *Morrison v. City of Portland*, 70 Or App 437, 689 P2d 1027 (1984), and on our statement there:

> "The plain import of LUBA's first opinion was that the city's decisional criteria needed clarification that only the city could provide. If that was a correct disposition, petitioners were entitled to present an argument with the benefit of the city's clarification of its standards." *Id.* at 442 (footnote and citations omitted).

The petitioners in *Morrison* brought two sequential appeals to LUBA from city decisions allowing variances. In the first, LUBA remanded for the city to make clarifying findings "about the meaning and application of its variance ordinance" because, LUBA concluded, the ordinance and the city's interpretation of it in the first local proceeding were so unclear that LUBA could not "properly perform [its] review function." *Id.* at 439. No party sought our review of LUBA's decision in the first appeal. In the city proceedings on LUBA's remand, the city made the explanatory findings, "but did not permit petitioners or their attorney to offer argument or evidence[.]" *Id.* The petitioners appealed to LUBA again, and it affirmed the city's decision. The petitioners then sought our review of LUBA's disposition of the second appeal and contended that the city had erred by not allowing them to present evidence or argument following LUBA's remand in the earlier appeal. We agreed. We reasoned that the basis for the remand was LUBA's conclusion that the city's original proceedings had not produced a comprehensible interpretation

---

[3] Petitioners describe LUBA's holding as requiring an "offer of proof." That term usually refers to a showing in a trial court or other lower tribunal of the evidence that a party seeks to introduce, and it is required to preserve the party's claim on appeal that the inferior body erred by excluding the evidence. We do not read LUBA's opinion as having required an offer of proof in that sense. Rather, it held that petitioners could not demonstrate error without making a direct showing to LUBA itself that they could have produced some specific evidence or kind of evidence at a second hearing that they did not produce at the first and that was responsive to the county's interpretation.

of the ordinance, and it followed that the petitioners "could not have been in a better position to present an argument for denying the variance before [the clarifying] findings were made than LUBA was to review the decision." *Id*. at 442. We emphasized that our holding was logically compelled by LUBA's first decision, the correctness of which was not before us, but which we nevertheless questioned in a footnote. *Id*. at 442 n 3.

*Morrison* has no application beyond its own unusual facts. In light of LUBA's decision in the first appeal there, it was a given at the outset of our review of the second that the city's original interpretation and application of the ordinance eluded comprehension. In essence, LUBA had decided in the first appeal that the city's original interpretation was such that the parties had not had a reasonable opportunity to make a responsive presentation in the original city proceedings but, in the second appeal, LUBA held that the city was not required to provide that opportunity along with the clarification that LUBA did require. Thus, the question before us here was effectively answered in *Morrison* before we began: The city's initial interpretation there was outside the range of reasonable anticipation. For the reasons we have discussed, that is not the case here.

We hold that neither the county nor LUBA erred by holding that petitioners were not entitled to a second evidentiary hearing.

Affirmed.